[No. 31052.  *En Banc.*  June 24, 1949.]

THE STATE OF WASHINGTON, *on the Relation of the State Finance Committee, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*The Attorney General* and *C. John Newlands, Assistant,* for relator.

[1] Reported in 207 P. (2d) 730.

*George Downer, Assistant Attorney General,* for respondent.

*Preston, Thorgrimson & Horowitz, amicus curiae.*

HILL, J.—Application has been made by the state finance committee for a writ of mandate to compel the state auditor to cause a warrant to be drawn against the permanent school fund in the amount of five hundred fifty thousand dollars in payment for general obligation bonds to be issued by Pacific county hospital district No. 1. The auditor has demurred to the application.

The act authorizing the creation of public hospital districts is chapter 264, p. 841, of the Laws of 1945 (Rem. Supp. 1945, § 6090-30 *et seq.*). Four sections only of that act require consideration here.

Section 6 is an enumeration of the various powers of public hospital districts, and subsections (e) and (f) thereof were, prior to the 1949 amendment hereinafter referred to, as follows:

"(e) To contract indebtedness or borrow money for corporate purposes on the credit of the corporation or the revenues of the public hospitals thereof, and to issue bonds therefor, bearing interest at a rate not exceeding six per cent (6%) per annum, payable semi-annually, said bonds not to be sold for less than par and accrued interest.

"(f) To raise revenue by the levy of an annual tax on all taxable property within such Public Hospital District not to exceed three (3) mills. . . ."

Sections 12, 13, and 14 relate to the issuance of general bonds when it is deemed advisable that the district purchase, condemn, or construct a public hospital, or make additions or betterments thereto or an extension thereof (§ 12).

Section 13 relates to the form of the general bonds; and § 14 provides that the principal and interest of such bonds

". . . shall be paid from the revenues of such Public Hospital District after deducting costs of maintenance, operation, and expenses of the Public Hospital District, and any deficit in the payment of principal and interest of said general bonds shall be paid by levying each year a tax

upon the taxable property within the district sufficient to pay said interest and principal of said bonds, which tax shall be due and collectible as any other tax. . . ."

It will be noted that two types of bonds are authorized. Those referred to in § 6 (e) are for any corporate purpose and are issued on the credit of the corporation or the revenues of the hospital (including the three-mill levy authorized by § 6 (f)), and cannot be sold for less than par and accrued interest. There is no limit fixed as to the amount of these bonds that can be issued, and no requirement of any vote by the electors of the district to authorize their issuance. They will hereinafter be referred to as § 6 (e) bonds.

The bonds authorized by §§ 12, 13, and 14 are denominated general bonds, and may be issued only for the purchase, condemnation, acquisition, or construction of a public hospital, or the making of an addition or betterments thereto or extensions thereof. Such bond issues have a thirty-year limitation, and can be sold in such manner as the commission shall deem for the best interests of the district. If the indebtedness incurred by the issuance of such bonds would bring the indebtedness of the district to an amount exceeding one and one-half per cent of its taxable property, the proposition of incurring such indebtedness must be submitted to the electors of the district (§ 12). These will hereinafter be referred to as § 12 bonds.

The three-mill limitation in § 6 (f) represents the maximum that could be levied under the 1945 act to raise revenue for operating expenses, including the payment of § 6 (e) bonds. By the 1945 act, the only time a hospital district could exceed the three-mill limitation provided for in § 6 (f) was when its revenues (including the three-mill levy referred to) were not sufficient, after costs of maintenance, operation, and expenses were deducted, to pay the principal and interest of § 12 bonds, in which event

". . . any deficit in the payment of principal and interest of said general bonds shall be paid by levying each year a tax upon the taxable property within the district sufficient . . ." (§ 14)

for that purpose.

In November, 1948, the commissioners of the public hospital district submitted to the voters of the district this proposition:

"Shall Pacific County Hospital District . . . issue $550,000.00 of bonds for the purpose of constructing, equipping, *operating* and *maintaining* a forty (40) bed hospital. . . ." (Italics ours.)

The vote was favorable, and met all statutory and constitutional requirements.

This proposition apparently was submitted with the idea of securing approval for § 12 bonds, and with the intent to come within exception "(b)" of the forty-mill tax limit amendment (state constitution, amendment 17). By that amendment, the aggregate of all taxes levied upon real and personal property shall not exceed forty mills in any taxing district. To that aggregate limitation or *any specific limitation* imposed by law, there are only three exceptions. "(A)" permits an excess millage when authorized at an election "not more than twelve months prior to the date on which the proposed levy is made. . . ." "(B)" permits an excess millage for the purpose of paying principal and interest on bonds issued "solely for capital purposes, other than the replacement of equipment . . . ," when the bond issue has been approved by the electors of the district issuing the bonds. No authorization year by year is required under this exception, and the approval of the bond issue and of the excess millage required to retire it, permits the limitation to be exceeded each year during the term of such bonds. "(C)" permits an excess millage for the purpose of paying the principal or interest on general obligation bonds outstanding on December 6, 1934, or for the purpose of preventing the impairment of an obligation of a contract when ordered by a court of last resort.

It is our view that the vote authorizing the five-hundred-fifty-thousand dollar bond issue in November, 1948, did not authorize the issuance of § 12 bonds, because § 12 bonds are for capital purposes only and must be

944

> (1) to purchase,
> (2) purchase and condemn,
> (3) acquire, or
> (4) construct

a public hospital, or

> (5) to make additions or
> (6) betterments thereto, or
> (7) extensions thereof;

whereas the question submitted to the voters of Pacific county by the notice of election and by the ballot was:

"Shall Pacific County Hospital District . . . issue $550,000.00 of bonds for the purpose of constructing, equipping, *operating* and *maintaining* a forty (40) bed hospital . . ." (Italics ours.)

It might be that bonds issued for the purpose of equipping the hospital would come within the provisions of § 12, but it is too clear for argument that bonds authorized for the purpose of operating and maintaining the hospital cannot be § 12 bonds.

If these bonds are not § 12 bonds, either there is no authority for their issuance or they are § 6 (e) bonds.

The various distinctions between § 6 (e) bonds and § 12 bonds in the public hospital district act suggest to us that it was the intent of the legislature that the former were to be issued "on the credit of the corporation or the revenues of the public hospitals thereof," which revenues include the millage permitted by § 6(f).

■ The state finance committee cannot invest permanent school funds of the state in anything except general indebtedness bonds. Rem. Rev. Stat. (Sup.), § 5539 [P.P.C. § 947-7].

■ Attention is also called to the fact that the effort to bring this five-hundred-fifty-thousand dollar bond issue within exception "(b)" to the forty-mill limit amendment also failed, because the bond issue authorized is for the purpose of "constructing, equipping, operating and maintaining a forty (40) bed hospital"; whereas the only bond issues that can meet the requirements of that exception are

those that are "solely for capital purposes, other than the replacement of equipment. . . ."

While the matter of the levies that can be made to retire bonds and pay the interest thereon unquestionably affects their desirability from an investment standpoint, we are aware of no authority on the part of the auditor to challenge the judgment of the state finance committee on the basis of whether a proposed investment is good or bad, if the bonds are of a type of security permitted by law for the investment of the various funds of the state. The fact that levies for the payment and retirement of the bonds in question are subject to both the limitation fixed by § 6 (f) of the public hospital district act, as a specific limitation imposed by law, and the aggregate limitation of the forty-mill limit amendment, would be material only on the issue of whether they were or were not a desirable investment; but, since we hold that the bonds are not § 12 bonds, and hence are not "general indebtedness" bonds of the hospital district, permanent school funds cannot be invested therein and the auditor properly refused to cause a warrant to be drawn in payment for the bonds.

We have not overlooked the amendment of § 6 (f) by chapter 197 of the Laws of 1949 (Rem. Supp. 1949, § 6090-35). This amendment makes it possible for the district to exceed the three-mill limit fixed by that section, when authorized so to do at an election held for that purpose. It provides for an excess millage within exception "(a)" of the forty-mill limit amendment, and not exception "(b)," relating to bond issues. Granting *arguendo* all of the retroactive effect claimed for this amendment, it cannot change the requirements of a constitutional provision or the fact that the bonds are not general obligation bonds under § 12 of the public hospital district act.

The writ of mandate will not issue.

BEALS, ROBINSON, and MALLERY, JJ., concur.

JEFFERS, C. J., concurs in the result.

STEINERT, J. (concurring in the result)—I think that the auditor's demurrer to the relator's petition should be over-

ruled, but I am in accord with the result of the majority opinion to the extent that it presently denies the issuance of the writ of mandate. The manner in which this case has been brought to us indicates to me that its purpose is simply to obtain from this court an advisory opinion with reference to the validity of certain bonds which a county hospital district proposes to issue. We are not authorized to render such opinions and do not knowingly do so.

In our conference upon this case, following the oral argument in court, a number of questions were raised which had not been discussed in counsel's briefs nor upon the oral argument. The case is a very important one, and the decision to be made with respect thereto affects not only the present project and the parties immediately concerned therein, but also similar projects and other persons elsewhere concerned. The case is too important to be disposed of upon a limited presentation and a necessarily inadequate consideration by the court. It should be presented on a record and argument which will properly advise this court and enable it to dispose of the crucial questions inherent in the issues here involved.

GRADY, J., concurs with STEINERT, J.

SCHWELLENBACH, J. (concurring in the result)—I concur in the result, but am of the opinion that Art. VII, § 2, of the constitution (the seventeenth amendment) does not authorize the commissioners of a public hospital district to make annual levies over a thirty-year period in any amounts they may see fit. The amendment authorizes a taxing district to issue general obligation bonds for capital purposes

"when authorized so to do by a majority of at least three-fifths of the electors thereof voting on the proposition to issue such bonds and to pay the principal and interest thereon by an annual tax levy in excess of the limitation herein provided during the term of such bonds, . . ."

There are submitted to the electors two propositions: one, the issuance of the bonds in a sum certain; and, two, the payment of the principal and interest thereon by a certain

specified annual tax levy in excess of the constitutional limitation.

The amount of the levy can be determined with reasonable certainty. When we consider the history of the forty-mill legislation which was finally made a part of the constitution, it is inconceivable that the people intended to give to the governing body of any taxing district blanket authority to levy in excess of the constitutional limitation in any amount they saw fit over a number of years. That was what the people were determined to eliminate. Therefore, in enacting their amendment, they reserved to themselves not only the sole power to authorize such excess levies, but the exclusive right to incorporate within such an authorization the specific rate of those levies.

SIMPSON, J., concurs with STEINERT and SWELLENBACH, JJ.,

August 8, 1949. Petition for clarification denied.