[No. 31153. Department One. July 24, 1950.]

THOMAS B. ROSS et al., Respondents, v. JEROME NORTON et al., Defendants, SEATTLE HOME MORTGAGE CORPORATION, Appellant.[1]

[1] Reported in 221 P. (2d) 476.

836

*Shorett, Taylor & Revelle,* for appellant.

*Howard Carothers,* for respondents.

BEALS, J.— Plaintiffs Thomas B. Ross and Mildred Ross, husband and wife, who reside in Tacoma, Washington, are the owners of a tract of land in King county, described as the east one hundred sixty-five feet of government lot 1 and of the southeast quarter, all in section 1, township 21 north, range 3 east W. M. This tract of land is bounded on the north by the shore of Puget Sound and extends south approximately twenty-nine hundred feet to the southwest corner of section 6, township 21 north, range 4 east W. M.

The property is improved by a dwelling and outbuildings, located approximately one hundred feet south of the beach, plaintiffs occupying the house during the summer months.

The land rises gradually from the beach for a distance of five or six hundred feet and, from that point to the south boundary, is generally level. A ravine or gulch extends from near the north boundary of the tract, just beyond the west line of plaintiffs' property, for approximately eight hundred feet, where it enters the tract and continues for about three hundred feet on plaintiffs' land. A power line is located on or near the east boundary of the property, running parallel to the boundary and extending from a point near the beach for a distance of seven or eight hundred feet south, where it turns west, crossing the tract.

The evidence is not clear as to whether the power line is located on plaintiffs' or defendant corporation's land. In any event, the north and south power line runs very close to the east boundary of plaintiffs' property. Whether it is ten feet west of that boundary, as plaintiff Thomas Ross testified, or a few feet east of the line, is unimportant, as the trespass upon plaintiffs' property occurred south of the point where the power line turned west across their land.

The location of the line is important only as being a very clear indication of where the boundary line between the two tracts is situated.

Prior to 1947, the land was heavily wooded, covered by a growth of alder, maple, fir, hemlock, and other varieties of trees.

The defendant Seattle Home Mortgage Corporation is a corporation organized under the laws of this state, and is the owner of a platted tract known as "Marine View Estates," including, with other lands, government lots Nos. 5 and 6, being the westerly portion of the southwest quarter of section 6, *supra*.

The north and south section line forms a common boundary between the two tracts of land.

Prior to and during the year 1947, defendant corporation was engaged in developing its platted property above referred to, which was covered with a growth of timber generally similar to that on plaintiffs' tract.

Defendant Jerome Norton was engaged in the business of purchasing timber and removing it from lands which the owners desired to clear. During the month of May, 1947, the defendant corporation entered into a written contract with Norton, who agreed to remove timber from defendant's land above described, also agreeing to remove trees only as instructed, to render daily reports of timber removed, and so forth.

William P. Joslin, an officer of defendant corporation, wrote to plaintiff Thomas Ross, informing him that the corporation intended to clear its platted tract, sell the timber thereon, and have the same removed, suggesting that Mr. Ross arrange with Mr. Norton for the removal of timber from his property.

It appears beyond question that both Joslin and Norton understood that plaintiffs had decided, definitely, that no trees on their property were to be cut.

Norton began the operation in June, 1947, commencing the cutting of trees on defendant's land. The operations continued until December, when Norton reached a portion of defendant's property near the boundary line between

that tract and plaintiffs' land. Thereafter, as was admitted by defendant corporation, though denied by Norton, the latter crossed the property line and cut many trees on plaintiffs' land, some of which were removed, but a considerable number having been left where they fell. Defendant corporation admits that the trees on two acres of the property were cut, plaintiffs contending that the area cut amounted to three and three-fourths acres.

During the month of October, 1948, plaintiffs filed their complaint, naming the corporation and Mr. and Mrs. Norton as defendants, alleging the ownerships by the respective parties of the tracts above described, and that defendant Norton, under a contract of employment by the corporation to clear the latter's property, entered upon plaintiffs' land, cutting and removing therefrom timber of the value of three thousand dollars, and damaging the property in the sum of thirteen hundred dollars by falling and removing the trees, constructing logging roads, destroying many small trees growing on the tract, and leaving fallen trees and debris on the ground.

The complaint further alleged that Norton entered upon plaintiffs' property under instructions from defendant corporation; that the trespass was deliberate and not occasional or involuntary; that it was committed without plaintiffs' knowledge or consent, and that the defendants, pursuant to Rem. Rev. Stat., §§ 939, 940, were liable to plaintiffs for treble the amount of damages suffered on account of the trespass. Plaintiffs demanded judgment accordingly.

By its answer, defendant corporation denied that Norton or any person had cut or carried away timber from plaintiffs' land or had damaged the property, and, by way of an affirmative defense, alleged that Norton had performed work under a contract and that defendant corporation was not liable for any trespass committed by him.

Plaintiffs replied, denying the allegations of the affirmative defense.

Defendants Norton filed no answer, but it appears from the statement of facts that, at the trial, they appeared *pro se*.

The action was tried to the court, sitting without a jury, and resulted in findings of fact and conclusions of law in plaintiffs' favor, the court finding that, under the agreement between defendant corporation and Norton, the former retained and exercised control and direction over Norton, and that Norton wrongfully trespassed upon plaintiffs' property and logged and cleared portions thereof, to plaintiffs' damage. The court further found that the trespass was committed by direction of the corporation's agents, and that the corporation was responsible for Norton's acts.

The court entered conclusions of law stating that plaintiffs' damages amounted to $1,216, and that, under the statute, they were entitled to judgment against defendants for treble that amount or $3,648, for which sum, and costs, judgment was entered against defendants.

From this judgment, the defendant Seattle Home Mortgage Corporation has appealed.

Appellant makes the following assignment of errors:

"The trial court erred:

"(1) In denying appellant's challenge to the sufficiency of the evidence and Motion to Dismiss the Complaint with prejudice made at the close of the plaintiffs' case.

"(2) In entering paragraph V (Tr. 13-14) Findings of Fact wherein the court found that Jerry Norton was agent for appellant and that appellant exercised direction and control over said Norton in performance of the work.

"(3) In failing to find that Jerry Norton was an independent contractor and conclude that appellant was not responsible for his trespass.

"(4) In entering Finding of Fact paragraph VII (Tr. 15).

"(5) In failing to find that the trespass was casual or involuntary and both appellant and trespasser Norton had probable cause to believe that the land on which such trespass was committed was its land or the land of the person in whose service the act was done and, therefore, the damages should be single.

"(6) In taking judicial notice of amount of an item of damage for alder cut and granting judgment thereon.

"(7) In trebling the amount of damages for damage to land and entering judgment against appellant in favor of respondents for the same."

By a written agreement, dated May 28, 1947, between defendant Norton, as first party, and appellant, as second party, Norton agreed to remove from appellant's land all alder and maple, and such fir and hemlock "as may be considered hazardous to the property," appellant's agent to decide the particular fir and hemlock trees to be removed. Norton was to remove the stumps and "clean up the individual tracts as he goes," piling stumps, tops, and so forth, for burning. He was to take care to prevent damage "to the evergreen and dogwood trees" which appellant should choose to leave standing. The contract was for clearing land, and the sale of the timber cut was incidental. Appellant reserved control over the work to be performed.

From the letters which Mr. Joslin wrote, on behalf of appellant, to respondent Thomas B. Ross, and from other evidence in the record, it appears that appellant desired that respondents cut some of the tall trees standing upon their property. Joslin opened his letter to Mr. Ross of June 3, 1947, as follows:

"Having received no response to my letter of last week I am writing again in the hope that we may come to some arrangement to dispose of your tall alder which affects our view and is certainly of no benefit to your tract, unless you consider a couple of million caterpillars beneficial."

On direct examination, Mr. Joslin testified that he told respondent Thomas Ross that appellant had contracted for the sale and removal of timber from its property, and suggested that respondents sell some of their timber. In the course of his testimony, Mr. Joslin said:

". . . I said that we would like to have some of the large alder out of there, that it would improve our view, and in the meantime he could sell his alder and clear his land, as the stumps rotted out very quickly, and he would have nice clear land at no cost. In fact, he would have money for the timber. He told me at that time that he had bought the property for the waterfront, had never been in the rear portion of it, and did not know what was back there. He said

he would go back there within the next few days and would stop in to see me, which he never did. Q. Did you say he never did see you about it and that he said he would? A. No, he did not. Q. You wrote him about the matter? A. Yes. Q. Did you get any response to that? A. No. Q. That was May 28th. Then, you wrote him the June 3rd letter, that other letter there? A. Yes. Q. Did you get any response to that? A. Yes, Mrs. Ross stopped to see me one day. Q. What did she say? A. Well, she seemed to be very upset that I had infringed on their right, or something, by writing them that letter. In fact, it was very unpleasant, and nothing occurred at the meeting. She seemed to be displeased about the whole thing. That was all that occurred."

On cross-examination, Mr. Joslin testified that there were some very tall alders on respondents' property, "most of them are still there sitting right out there, and I'd like very much to have them down right in there, very tall and cut out a lot of view. They are doing him no good whatsoever."

From the evidence, it appears that the boundary line between respondents' and appellant's respective properties was indicated on the ground and it is, of course, a straight north and south line. Norton started cutting trees on respondents' property at a point about one hundred feet south of the place where the power line turned west across respondents' land. There was no trespass north of that point.

The trial court found that, at the place indicated, Norton "cleared and denuded of all growing timber, except a few scattered small trees," approximately one and one-half acres of respondents' property; that, in the course of the performance of his work under the contract with appellant, Norton trespassed upon other portions of respondents' property, cutting and carrying away merchantable timber and falling other trees which were left on the ground; that tractor and logging roads were made on the land; that, in these operations, Norton destroyed much of the young growing timber on the southerly portion of the land; that the timber removed was of the value of three hundred sixteen dollars, and that the "land was permanently injured and damaged, the permanent injury and damage beyond

replacement being in the amount" of nine hundred dollars. The court further found:

"That said trespass upon plaintiffs' [respondents'] land was committed by said Norton with the knowledge of and upon the advice and direction of said Joslin and Sather, the authorized representatives and agents of said Seattle Home Mortgage Corporation, by reason of which said defendant became responsible for said acts of trespass so committed by said Norton, and became liable for the damages resulting therefrom.

"That said trespass was committed without the knowledge or consent of plaintiffs, and contrary to orders given by them to said Norton and said Joslin not to cut timber upon plaintiffs' land. That said trespass was wilful and was not casual or involuntary, and that neither said Norton or the representatives of the Seattle Home Mortgage Corporation had probable cause to believe that the land upon which said trespass was committed belonged to the defendants, or either of them."

It appears that Norton was furnished with a blueprint of appellant's property as platted, and that he knew that the west boundary of appellant's land was a straight north and south line.

Edward W. Sather, a real-estate agent, testified that he owned several tracts of land near appellant's platted property; that he and Mr. Joslin were friends and were co-operating in developing the neighborhood for their mutual benefit; that he was present when the contract between Joslin and Norton was negotiated, and that, while Mr. Joslin was in Montana, he "was kind of watching things out there for Joslin." The witness testified that he knew that Joslin had been having trouble "over this property line," and, early in June, being of the opinion that the "line [should] be very definitely established as far as Mr. Norton was concerned," the witness, with Richard M. Smith, the civil engineer who platted appellant's property, went over the land with Norton, Mr. Smith indicating the property line. At this time, Norton was also clearing the witness's land.

On cross-examination, Mr. Sather indicated that he was looking after things on behalf of Mr. Joslin while the latter was absent, and that the witness had authority to correct

"anything going wrong," if he had occasion to do so, but that he did not at any time exercise this authority.

Defendant Norton, called by respondents as an adverse witness, testified that he had contracted with appellant as above set forth, and that he knew Mr. Sather, who he thought was employed by Joslin or appellant. The witness admitted that he had seen monuments marking the property line; that he visited the property with Mr. Sather, who showed him the line; that he was told that the power line was on appellant's property, and that, sighting from that line, the party went due south. He testified that Mr. Sather indicated certain trees and "snags," telling him that they were on appellant's land. Mr. Norton admitted doing the work complained of and that, in fact, he worked almost to the west boundary of respondents' tract, but denied that he did any work other than as directed by appellant's agents. The witness testified that he was told that appellant "wanted to have as much of a view" as possible at a certain point. Norton admitted that he did not remove all of the timber which was cut on respondents' property, but left a considerable portion lying where it fell.

Examination of the record convinces us that appellant's first three assignments of error are without merit.

The trial court's finding as to the amount of damage suffered by respondents as the result of Norton's operations on their property is amply supported by the evidence.

Appellant assigns error upon the refusal of the trial court to find that the trespass committed was casual or involuntary; upon the court's finding that the "trespass was wilful and was not casual or involuntary," and upon the court's conclusion that respondents were entitled to recover judgment for treble the amount of the actual damage suffered.

The pertinent portions of Rem. Rev. Stat., §§ 939, 940 [P.P.C. §§ 103-5, -7], read as follows:

"Whenever any person shall cut down, girdle, or otherwise injure or carry off any tree, timber, or shrub on the land of another person, . . . without lawful authority, in an action by such person . . . against the person committing such trespasses, or any of them, if judgment be

given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, . . . judgment shall only be given for single damages."

These statutes are found in Laws of 1869, chapter 48, §§ 556, 557, p. 143, and several times have been considered by this court.

■ Appellant cites cases in which treble damages were denied, and respondents rely upon cases in which such damages were allowed. These authorities have been discussed by this court, and it is sufficient to say that the case at bar falls within the group represented by the cases of *Nethery v. Nelson*, 51 Wash. 624, 99 Pac. 879; *Harold v. Toomey*, 92 Wash. 297, 158 Pac. 986; *Fredericksen v. Snohomish County*, 190 Wash. 323, 67 P. (2d) 886, 111 A. L. R. 75, *Lawson v. Helmich*, 20 Wn. (2d) 167, 146 P. (2d) 537, 151 A. L. R. 930, and *Mullally v. Parks*, 29 Wn. (2d) 899, 190 P. (2d) 107.

In the case last cited, the court, after referring to the *Harold, Fredericksen*, and *Lawson* cases, said:

"While the cases cited above differ somewhat in point of fact from the case at bar, as they likewise differ from each other, they nevertheless well illustrate the principle that where the trespass is without lawful authority, the tort feasor will be subject to treble the amount of damages assessed, unless it be shown that the trespass was casual or involuntary, or that the trespasser had probable cause to believe that the land on which the trespass was committed was his own."

The trial court's finding No. 7, above quoted, is supported by the record before us, and the court correctly concluded that the damages suffered by respondents should be trebled.

From the evidence, it appears, and the trial court found, that there had been cut on respondents' land seventy-six hundred sixty board feet of alder. The trial court valued this wood at six dollars per thousand feet and granted respondents judgment upon that basis.

Appellant assigns error upon this finding, contending that the record contains no evidence concerning the value of alder wood. No error is assigned upon the court's finding as to the amount of alder cut.

The fact that the amount of alder for which appellant was liable was not disputed, left for determination only the value of the wood. The value fixed by the court is supported by evidence contained in the record. In the case of *Kruegel v. Kitchen*, 33 Wash. 214, 74 Pac. 373, the court said:

"Nor were the respondents required to show, with absolute precision, the value of the brick delivered at the town of Pullman at the times alleged. Compensation is the fundamental principle of the law of damages, not necessarily to be shown with precision and accuracy, but approximately."

The *Kruegel* case was cited with approval in *Jemo v. Tourist Hotel Co.*, 55 Wash. 595, 104 Pac. 820; 26 L. R. A. (N.S.) 926.

The trial court's judgment on the facts is supported by the preponderance of the evidence, and the court did not err in entering judgment in respondents' favor for treble the amount of the damages found.

The judgment appealed from is affirmed.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and DONWORTH, JJ., concur.

September 8, 1950. Petition for rehearing denied.