[No. 44364. En Banc. December 15, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. KARL HERRMANN, ET AL, *Appellants.*

*Charles J. Herrmann* and *Lowell H. Ashbach, Jr.,* for appellants.

*Slade Gorton, Attorney General,* and *Edward B. Mackie, Deputy,* for respondent.

DOLLIVER, J.—Predicated upon the State Auditor's Report of Examination No. 3306, filed by the State Auditor on January 23, 1976, and related investigation, Attorney General Slade Gorton, pursuant to RCW 43.09 and RCW 43.88.160, filed a civil suit for damages against then State Insurance Commissioner Karl Herrmann and others. This suit alleged several causes of action involving malfeasance,

misfeasance and/or nonfeasance in office on the part of Herrmann and others.

This matter is before us on appeal from a denial by the trial court of Herrmann's application for a writ of mandamus directing the Attorney General to appoint a Special Assistant Attorney General to defend the Insurance Commissioner.

On May 7, 1976, Herrmann wrote the Attorney General asserting that "[Y]ou are required by both the Washington State Constitution and the statutes of our state to be the lawyer for me as State Insurance Commissioner." Herrmann cited RCW 4.92.060 and RCW 4.92.070 and stated: "There can be no doubt, therefore, that I am entitled to legal representation at the expense of the taxpayers in the same way as these same taxpayers are burdened by the cost of your endeavors."

On May 10, 1976, Gorton responded to the request by Herrmann as follows:

> You have requested that I also appoint a special assistant attorney general to represent you in *State v. Herrmann, et al.,* Thurston County Superior Court No. 54529. Such an appointment cannot be made. First, the 1975 amendment (Chapter 126, Laws of 1975, 1st Ex. Sess.) referred to in your letter only authorizes the defense of tort and civil rights actions under 42 U.S.C. § 1981 *et seq.* and does not authorize the defense of all actions which may be commenced against state employees. Second, the statute does not authorize the providing of the cost of defense by the state for employees when the state itself has initiated the action. Third, you will note that the 1975 statute requires that the employee has acted in good faith and it is readily apparent from the Complaint filed in this action that there is no way in which I can find that your actions which formed the basis for this suit were performed in good faith.

There was one more exchange of correspondence in which Herrmann, through his deputy commissioner, requested reconsideration by Gorton. The request was refused.

On July 14, 1976, Herrmann applied for a writ of mandamus in the Thurston County Superior Court.

The sole question before us is whether, in a civil action for damages brought by the Attorney General against a state elected official, that state elected official is entitled to a defense by the Attorney General. After thorough consideration of the relevant constitutional and statutory provisions, we must conclude that he is not.

Any representation of the defendant by the Attorney General is dependent upon the constitution and statutes of Washington and it is to them we turn. *See State v. O'Connell,* 83 Wn.2d 797, 812, 523 P.2d 872 (1974).

Const. art. 3, § 21, reads in relevant part as follows:

> The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law.

Plaintiff, citing *State ex rel. Tattersall v. Yelle,* 52 Wn.2d 856, 329 P.2d 841 (1958), raises the question as to whether, as a statutory rather than a constitutional officer, the Insurance Commissioner has a right to any representation conferred by article 3, section 21. We need not discuss this contention since representation in legal proceedings for state elected officials, state officers and state employees is provided by a statutory scheme enacted by the legislature in accordance with article 3, section 21. The constitutional provision is not self–executing. *State v. Gattavara,* 182 Wash. 325, 47 P.2d 18 (1935).

The first statute to be considered is RCW 43.10.030(3) which provides the Attorney General shall:

> Defend all actions and proceedings against any state officer *or employee acting* in his official capacity, in any of the courts of this state or the United States;

(Italics ours.) This 1888 territorial statute, first passed in statehood in 1891 (Laws of 1891, ch. 55, § 2(3), p. 95), remained virtually unchanged until 1975 when the italicized words *or employee acting* were added. Laws of 1975, ch. 40, § 5(3), p. 63.

The next pertinent statutes (RCW 4.92.060 and .070) were passed in 1921 as Laws of 1921, ch. 79, §§ 1, 2, p. 220.

Both RCW 4.92.060 and RCW 4.92.070 were substantially and significantly amended in 1975 by Laws of 1975, ch. 40, p. 61, and Laws of 1975, 1st Ex. Sess., ch. 126, p. 473. The statutes, as amended, and which are presently in effect read:

> Whenever an action or proceeding *for damages* shall be instituted against any state officer, including state elected officials, or employee ((for the performance of any official act)), arising from his acts or omissions while performing, or in good faith purporting to perform, his official duties, such officer or employee may request the ((administrative board)) attorney general to authorize the defense of said action or proceeding at the expense of the state.

(Italics ours.) Laws of 1975, ch. 40, § 1, p. 62, and Laws of 1975, 1st Ex. Sess., ch. 126, § 1, p. 473, now RCW 4.92.060.

> If the ((administrative board)) attorney general shall find that said officer or employee's ((acted in good faith and without negligence,)) ((it shall grant)) acts or omissions were, or purported to be in good faith, within the scope of his official duties, said request shall be granted, in which event the necessary expenses of the defense of said action or proceeding shall be paid from the appropriations made for the support of the department to which such officer or employee is attached. In such cases the attorney general shall appear and defend such officer or employee, who shall assist and cooperate in the defense of such suit.

Laws of 1975, ch. 40, § 2, p. 62, and Laws of 1975, 1st Ex. Sess., ch. 126, § 2, p. 473, now RCW 4.92.070.

The substitution of the *attorney general* for the *administrative board* was accomplished by Laws of 1975, ch. 40, §§ 1, 2, p. 62. All other amendments were contained in Laws of 1975, ch. 126, §§ 1, 2, p. 473.

It should be added that the intent of the legislature was to have the term *including state elected officials* apply in RCW 4.92.070 whenever the term *officer* was used. *See* Substitute Senate Bill No. 2133, Senate Journal, 44th Legislature (1975), at 1233.

█ This is an action for damages. Thus, RCW 43.10-.030(3) does not apply and the cases cited by defendant,

*State ex rel. Dunbar v. State Bd. of Equalization,* 140 Wash. 433, 249 P. 996 (1926), and *Reiter v. Wallgren,* 28 Wn.2d 872, 184 P.2d 571 (1947), are inapposite. *Dunbar* was an action in mandamus to determine whether the Attorney General must bring suit against a state officer. *Reiter* was an action for injunctive relief. Neither involved damages. Furthermore, we have found no case where relief was sought involving RCW 43.10.030(3) where the action was in damages.

The appellant also argues that RCW 43.10.040, RCW 43.10.067 and RCW 48.02.080 provide the Insurance Commissioner with a statutory right to a defense at public expense. Both RCW 43.10.040, which provides for representation by the Attorney General of the state officials, boards, commissions and agencies, and RCW 43.10.067, which restricts the employment of attorneys by state officials and agencies, were passed in 1941 as part of Laws of 1941, ch. 50, p. 116. It is clear that the purpose of Laws of 1941, chapter 50 was to end the proliferation of attorneys hired by various state agencies and place the authority for representation of state agencies in the Attorney General. *See State v. Gattavara, supra;* Letter of former Attorney General Smith Troy (served 1941–53) before Senate State Government Committee, January 31, 1977. RCW 48.02.080 provides for legal assistance for the Insurance Commissioner in enforcing the insurance code. None of these statutes is applicable to the fact situation before us.

It is apparent from the legislative scheme set forth in the previously quoted statutes that, when an action or proceeding in *damages* is brought against any state officer, employee or *state elected official,* the procedures contained in RCW 4.92.060 and .070 apply. The question then is whether RCW 4.92.060 and RCW 4.92.070, which have not previously been interpreted by this court, entitle Karl Herrmann to representation.

From 1921 to 1975, when an action or proceeding for damages was instituted against a state officer or employee, two steps had to be taken: (1) The officer or employee had

to request the administrative board, consisting of the Governor, as chairman, and "the directors of the several departments" (then RCW 43.17.080), to authorize the defense of the action or proceeding at the expense of the State (RCW 4.92.060); and (2) if the board found the "officer or employee acted in good faith and without negligence," the statute provided "it [should] grant said request." RCW 4.92.070. The administrative board was abolished by Laws of 1975, ch. 40, p. 61.

The 1975 amendment to RCW 4.92.060 and .070 made several changes in the 1921 act: (1) State elected officials are specifically included; (2) the request for defense goes to the Attorney General instead of the administrative board; and (3) rather than the previous requirement that the administrative board find the officer or employee "acted in good faith and without negligence," the 1975 amendments provide that, if the Attorney General "shall find" the "acts or omissions were, or purported to be in good faith, within the scope of his official duties" the "request [for defense] shall be granted" by the Attorney General.

■ The Insurance Commissioner in his letter of May 7, 1976, properly applied for defense under RCW 4.92.060, the only statute authorizing defense of a state elected official who is being sued for damages. At that time, the Attorney General was required to make a determination whether the acts or omissions of the Insurance Commissioner (1) were within the scope of the Commissioner's official duties, or (2) were purported to be in good faith within the scope of the Commissioner's official duties.

In his response of May 10, 1976, the Attorney General wrote:

[Y]ou will note that the 1975 statute requires that the employee has acted in good faith and it is readily apparent from the Complaint filed in this action that there is no way in which I can find that your actions which formed the basis for this suit were performed in good faith.

The sole judge under the statute as to whether an employee acted or purported to act in good faith within the scope of his duties is the Attorney General. Previously, this decision was at the sole discretion of the administrative board which had to find, additionally, that the employee acted without negligence. The Attorney General has held Karl Herrmann did not meet the test of the statute. Although the test and the decision maker have changed, the discretionary nature of the relief has not.

Furthermore, defendant concedes that, since under RCW 4.92.130, also amended in 1975, any claim adjudicated against an employee under RCW 4.92.070 would be paid by the State from the tort claims revolving fund, the defense by the Attorney General of a state employee sued in damage by the State was not contemplated by the legislature.

We hold that, in an action for damages brought by the State against a state elected official, state officer or employee, where the Attorney General fails to find that the acts or omissions of the elected official, officer or employee were or were purported in good faith to be within the scope of his official duties, then the defense of this action shall not be at the expense of the State.

Affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

ROSELLINI, J. (dissenting)—This action was instituted against the then Insurance Commissioner Karl Herrmann and his wife, and the companies which provided his official bond. Also named as defendants were certain individuals and companies engaged in the business of insurance in this state, an individual who allegedly purchased an asset of one of these companies then in receivership, an individual appointed by the Commissioner to conduct the receivership and to perform other services, and an individual who allegedly received payments of state funds under a contract with

the Insurance Commissioner during the period covered by the complaint.

The complaint alleged eight causes of action. The first cause of action stated:

> Between January 1, 1969, and the present date, defendant Karl Herrmann has committed acts of malfeasance, misfeasance or nonfeasance in public office, specifically the office of Insurance Commissioner, and/or used the powers of said office for the private financial benefit of himself and/or other persons in breach of the public trust imposed upon said defendant by law, and in violation of law.

With respect to this "cause of action" the Attorney General prayed for "such damages and other relief as the court may deem just and equitable."

The second cause of action alleged, in effect, that Herrmann (hereinafter called the Commissioner), by means of official acts, aided the defendants Federated American, Thompson, and Financial American Life, in consummating a transaction favorable to them but contrary to the public policy of the State. This transaction involved the sale of a permit issued prior to the Commissioner's tenure but allegedly extended by him in several successive actions. The purchaser allegedly paid $50,000 to the holder of the permit, of which $10,000 was allegedly paid to the Commissioner. The complaint alleged that the extensions were made without good cause and for the private financial benefit of certain private persons and entities, and that they resulted in "a breach of trust which directly resulted in financial benefit to said defendants, including the defendant Karl Herrmann, in the amount of $50,000 or more."

Upon this cause of action, the Attorney General prayed for judgment against the defendants involved in the transactions, including the Commissioner, in the amount of $50,000, and against one of the Commissioner's bondsmen.

The third cause of action alleged that the defendant McAfee, acting as special deputy insurance commissioner in charge of the receivership of Federal Old Line Insurance

Company, negotiated a sale of one of its assets to a person with whom he was closely associated and who held the property partly for his benefit; that a subsequent resale of the property resulted in a profit to the purchaser and McAfee of $34,000; and that this transaction constituted a breach of trust on the part of McAfee. It was further alleged that the Commissioner knew or should have known of this transaction and that his participation in or failure to prevent the acts alleged constituted a breach of public trust, misfeasance, malfeasance or nonfeasance on his part.

For a fourth cause of action, the complaint alleged that the acts described in the third cause of action constituted a violation of RCW 42.18, the Executive Conflict of Interest Act, as a result of which the special deputy and the purchaser of the asset received an unlawful benefit in violation of the chapter, in the amount of $34,000. This cause of action again alleged the Commissioner's involvement.

It was alleged in the fifth cause of action that the sale and subsequent resale of the Federal Old Line assets constituted violations of RCW 42.20.010, .010(3), .040 (misconduct of public officers), RCW 42.21.030 (code of ethics for public officials), and RCW 42.22.030 (code of ethics for public officers and employees). The complaint alleged that the three defendants were jointly and severally liable for the profits received by them. The prayer with respect to the third, fourth and fifth causes of action asked for judgment in the amount of $34,000 against the individuals involved and against the Commissioner's bonding companies in the amount of their bonds. Also, penalties in the sum of $306,000 were demanded in the fourth cause of action.

The sixth cause of action sought recovery of $6,000 from the Commissioner and Ohio Casualty Company. This amount was allegedly paid to one McEvoy for a contract which was not performed.

The seventh cause of action alleged that, according to the belief of the Attorney General, certain services required by a contract which the Commissioner entered into with the defendant McAfee were not performed by him, but were

performed by persons in the Commissioner's office. It was alleged that the Commissioner knew this or should have known it and that "the payment of $27,500 under that contract constituted malfeasance, misfeasance or nonfeasance on the part of Herrmann." The prayer asked for judgment against these two defendants in that amount and against Ohio Casualty Company in the amount of $25,000.

In the eighth and final cause of action, it was alleged that the State of Washington had expended $41,897.87 of state funds for expenses, including compensation of a special deputy acting for the Insurance Commissioner in connection with delinquency proceedings involving Federal Old Line; that RCW 48.31.120(6) requires that such compensation and expenses be paid from the funds or assets of Federal Old Line, and that the defendant Guaranty Association is liable for the payment of those amounts under RCW 48.32A. It further alleged that the Guaranty Association refused to pay more than $29,604.58; that the Commissioner knew or should have known of the expenditures and should have taken some action to prevent them or recover the funds and that his failure to do so constituted misfeasance or nonfeasance. The prayer asked for judgment in the amount of $12,293.29 against the Guaranty Association and the Commissioner.

Nowhere in this complaint is there any allegation that, as a result of acts of the Commissioner, the State of Washington suffered damage. The first cause of action is so vague that it can be viewed only as an introduction to the succeeding causes of action, which specify the actions of which complaint is made, and even there it is not claimed that the State had suffered injury to its person or property.

The term "damages" in its legal sense is the compensation which the law will allow for an injury done. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 111 P.2d 612 (1941). Compensation is the fundamental principle of the law of damages. *Ross v. Norton,* 36 Wn.2d 835, 221 P.2d 476 (1950). In *Baldwin v. Alberti,* 58 Wn.2d 243, 245, 362 P.2d 258 (1961), this court approved the following statement

found in *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 51, 25 P. 1072 (1891):

> ". . . 'damages are given as a compensation or satisfaction to the plaintiff for an injury actually received by him from the defendant. They should be precisely commensurate with the injury, neither more nore less; and this whether it be to his person or estate' . . ."

The $50,000 transaction described in the second cause of action resulted in no claimed loss to the State, and the same is true of the transactions involved in the third, fourth and fifth claims. The total amount asked, by way of forfeitures and penalties with respect to these transactions, was over $390,000.

The remaining three causes of action seek recovery of amounts paid on two contracts which allegedly were not performed, and expenses paid by the State which should have been paid by an insurance company. It is implicit that all of these amounts were paid by the treasurer in the mistaken belief that they were owed by the State, and what is being asked is restitution, not damages. The Commissioner's liability for such restitution is based upon his alleged knowledge of the facts and his failure to object to the payments or seek their recovery.

Penalties and forfeitures, both of which are punitive and neither of which is compensatory, do not constitute damages, as that term is ordinarily understood in the law. Nor is an action for restitution properly viewed as one seeking compensation for an injury suffered. The distinction between such an action and a damage action is described in the Restatement of Restitution § 5, comment *a* at 22 (1937), as follows:

> In substance, the action is different from an action brought to secure damages for breach of contract, since the plaintiff seeks to be put back into his original position rather than to recover damages for the breach of promise.

While restitution or reimbursement is the remedy sought in three of the claims, I am willing to concede that it is

possible to view them as damage claims, at least insofar as liability is sought to be imposed upon the Commissioner, since they allege an improper expenditure of state funds which he could have prevented. These claims, however, total less than $46,000. Viewed as a whole, the action is not one for damages. It is punitive in nature, rather than compensatory. Even the Attorney General in his brief exhibits an understandable reluctance to call this a damage action, and instead terms it one for "monetary recovery." Yet the majority opinion concludes, without inquiry, that the action is one for damages and is therefore subject to the provisions of RCW 4.92.060 and .070.

The presence of a few "damage" claims should not convert the entire action into one for damages. But if they are damage claims, the Attorney General nevertheless has the duty to defend them, assuming RCW 4.92.060 and .070 apply to actions brought by the State. The acts in question were concededly not ultra vires, and as to acts or omissions within the scope of official duties, under these sections the Attorney General has no discretion to refuse representation. It is apparent that the words "good faith" modify the words "purported to be" rather than the words "acts or omissions."

But whether or not this is a damage action, I do not think that it is governed by the provisions of RCW 4.92-.060, .070, and .130. It is quite obvious to me that these provisions were never intended to apply to actions brought by the State against one of its officers. If chapter 4.92 is viewed as a whole, it will readily be seen that the legislature had in mind actions brought by private individuals or corporations against state officers or employees. RCW 4.92.010 begins: "Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court." The succeeding sections provide for service of summons and complaint, for the procedure to be followed, and the limitation of actions. This brings us to RCW 4.92.060 and .070, which provide:

Whenever an action or proceeding for damages shall be instituted against any state officer, including state elected officials, or employee, arising from his acts or omissions while performing, or in good faith purporting to perform, his official duties, such officer or employee may request the attorney general to authorize the defense of said action or proceeding at the expense of the state.

If the attorney general shall find that said officer or employee's acts or omissions were, or purported to be in good faith, within the scope of his official duties, said request shall be granted, in which event the necessary expenses of the defense of said action or proceeding shall be paid from the appropriations made for the support of the department to which such officer or employee is attached. In such cases the attorney general shall appear and defend such officer or employee, who shall assist and cooperate in the defense of such suit.

The succeeding sections likewise obviously apply to claims brought against the State, its agents, officers, or employees, not to claims brought by the State.

These provisions exhibit no legislative awareness that their terms might be construed to apply to actions brought by the State against state officials. As the majority construes them, the Attorney General is required to represent the defendant only if he finds that he acted in good faith regardless of whether his act was within his official duties or ultra vires. Not only do the words of the statute not lend themselves to such a construction, but to so construe them leads to anomalous results. To condition the defendant's right to representation upon the approval of the plaintiff is to give him no right at all. Furthermore, RCW 4.92.130 provides:

A tort claims revolving fund in the custody of the treasurer is hereby created to be used solely and exclusively for the payment of claims against the state arising out of tortious conduct and against its officers and employees for whom the defense of the claim was authorized under RCW 4.92.070.

Surely it was not the legislative intent that the State should pass judgment in its own favor, and yet the legislature saw no need to make an exception when the action is brought by the State.

Another factor to consider is that this provision manifests an understanding that the "damage" actions contemplated in RCW 4.92.070 are tort claims. Subsection (2) allows payment of claims which have been approved for settlement pursuant to RCW 4.92.140. This latter provision provides for the settlement of tort claims and claims brought under 42 U.S.C. § 1981 *et seq.* (popularly known as the Civil Rights Act). 42 U.S.C. § 1983, providing a civil action for deprivation of rights, has been construed in the context of tort liability. *Rodriguez v. Jones,* 473 F.2d 599 (5th Cir. 1973); *Daly v. Pedersen,* 278 F. Supp. 88 (D. Minn. 1967). Thus, it is clear to me that when the legislature used the expression "action or proceeding for damages" in RCW 4.92.060, it had in mind tort claims and claims of that nature. I know of no instance when this State has brought an action in tort, either against its own officials or against anyone else.

Theoretically, an action by the State for injuries to its "person" seems hardly conceivable, but an action for injuries to its property should be and is in fact available to a state. *See* 72 Am. Jur. 2d *States* § 90 (1974); 81A C.J.S. *States* § 308 (1977). However, such actions are rare, whereas private suits against state officials, employees and agencies for injuries to the person are becoming increasingly prevalent. I have no doubt that it was suits of that kind which the legislature had in mind in enacting the provisions under consideration. They are designed to alleviate the burdens of such suits, when the plaintiff seeks to hold the official or employee personally liable, by providing for defense by the Attorney General and payment of any judgment or settlement, provided the official or employee was performing, or in *good faith purporting to perform,* his official duties.

The provisions in question are consistent with a legislative intent that they should apply to tort actions for damages brought by private parties, and are entirely inappropriate if the legislature contemplated that they would apply to actions brought by the State. Having in mind the rule that statutes should be given a reasonable interpretation to effect their manifest purpose, I would construe these provisions as inapplicable to actions brought by the State or one of its officials.

I should state that I agree with the majority's holding that RCW 4.92.070, as well as .060, applies to elected officials. I conclude this from the plain wording of the section, however, and see no necessity of seeking clarification in the spotty reporting of proceedings found in the Senate Journal. Legislative intent is first to be deduced, if possible, from what is said in the statute. *In re Estate of Lyons,* 83 Wn.2d 105, 515 P.2d 1293 (1973). To find the meaning of a statute, all other legitimate avenues of search should be exhausted before resort is had to evidence which itself is so clouded with ambiguity. In this instance, it appears that one Senator was simply telling another what the provisions in question said. His comment added nothing to the words used in the sections.

While considerable intellectual contortion is required to bring the present action within the coverage of these statutory provisions, it fits neatly into RCW 43.10.030(3), which requires the Attorney General to "[d]efend all actions and proceedings against any state officer or employee acting in his official capacity, in any of the courts of this state or the United States."

This is the section relied upon by the appellant in this proceeding. While he originally based his request for representation on RCW 4.92.060 and .070, he subsequently abandoned any reliance upon those provisions.

Armed with its unexplained assumption that an action seeking forfeitures, penalties, and restitution is an "action for damages", the majority opinion executes another leap to the conclusion that RCW 43.10.030(3) was impliedly

repealed by RCW 4.92.060 and .070 as to all damage actions, including those brought by the State. This assumption is embraced, even though as the opinion construes these sections, when an action is brought by the State, the defendant official or employee cannot claim the benefits of these provisions and those of RCW 4.92.130. In other words, it is the majority's position that by the enactment of the latter provisions, the legislature intended, by implication, to deny state officials and employees the rights and benefits afforded by either of these statutes—this despite the fact that RCW 43.10.030(3) was enacted to implement Const. art. 3, § 21. That section of the constitution provides that the Attorney General shall be the legal adviser of the state officers.

The rule is that repeal or amendment by implication is not favored, and it is the duty of the courts to endeavor to harmonize statutory provisions wherever possible. *Misterek v. Washington Mineral Prods., Inc.,* 85 Wn.2d 166, 531 P.2d 805 (1975). RCW 43.10.030(3) is a general law applying to all actions and proceedings against state officers and employees acting in their official capacities. RCW 4.92.060, .070, and .130 are special laws applying only to damage actions brought against state officers or employees, arising from their acts or omissions while performing or in good faith purporting to perform their duties, and (as I interpret these provisions) applying only to such actions when they are brought by others than the State. Where general and special laws are concurrent, the special law applies to the subject matter *contemplated by it* to the exclusion of the general law. *Wark v. Washington Nat'l Guard,* 87 Wn.2d 864, 557 P.2d 844 (1976); *State v. Walls,* 81 Wn.2d 618, 503 P.2d 1068 (1972).

RCW 43.10.030(3) imposes upon the Attorney General the duty of defending all actions and proceedings brought against a state officer or employee acting in his official capacity. It does not give him discretion to defend actions which were ultra vires, and it does not provide for the payment of personal judgments against the officer or employee.

RCW 4.92.060, .070, and .130, on the other hand, apply only to damage actions but cover certain ultra vires acts. Representation is *required* only where the acts or omissions were within the scope of the defendant's official duties. If they were in fact ultra vires, representation is made contingent upon the Attorney General's finding that the defendant acted in good faith in purporting to perform official duties.

The reason for this condition is made manifest when it is observed that the State obligates itself to pay any judgment recovered against such officer or employee, even though it be a personal judgment. The legislature's intent to protect the state's officers and employees from such burdensome liabilities is apparent in these provisions. We are all agreed that it was not its intent to afford such protection when the State brings the action. The only protection given to the official or employee in such circumstances is the right to be represented by the Attorney General, which is found in RCW 43.10.030(3), and I cannot find expressed in these statutes an intent to take that right away.

It is suggested that the Attorney General should not have a duty to represent an officer charged with breach of trust or malfeasance, misfeasance or nonfeasance. This introduces a question of public policy which the legislature must decide. That body has not seen fit to make an exception to this effect. It will be a rare case, I would think, in which an action brought against a state official does not allege some illegal or negligent conduct on his part, either threatened or consummated. The statute makes no exceptions, and it is plain that the legislature did not condition the right of defense upon the nature of the conduct alleged.

The legislative policy expressed in this statute, as it now stands, is that the presumption that a state official does his duty will carry through at least to the point of affording him a defender, even though his adversary be the State, where suit is brought against him for acts performed in his official capacity.

Whether the section is broad enough to require the defense of criminal prosecutions is a question we need not

decide at this time. The language used covers all civil proceedings in any event, and it makes no exceptions with respect to actions brought by another department of the state.

This court, in *Reiter v. Wallgren,* 28 Wn.2d 872, 184 P.2d 571 (1947), had under consideration Rem. Supp. 1941, §§ 11034-3, a prior statute which imposed upon the Attorney General the same duty of representing state officials. There, a taxpayer's suit against the State Capitol Committee was dismissed because the Attorney General had not been asked to bring the action, the court rejecting a contention that the Attorney General could not be expected to bring such a suit, his adversary position being established by the fact that he defended the taxpayer's suit. We said, at page 879:

> Inevitably, the attorney general, whatever may be his personal views, will be charged as a public officer with the responsibility of seeing that both sides of an issue are adequately presented to the court when there is a conflict between state officials or departments, or when there is a question as to whether a state officer, committee, or department is acting in an illegal manner, to the detriment of the public interest.

It is said that the Attorney General cannot adequately represent a defendant against whom he has brought suit. Nevertheless, the Attorney General has represented both sides of the issue in many suits brought to this court, and we have not heard it said that he neglected one or the other. Some of the cases are cited in the footnote below.[1]

---

[1]The following are cases in which the Attorney General has used his own assistants to represent the officer or agency against whom the action was brought: *State ex rel. Troy v. Yelle,* 27 Wn.2d 99, 176 P.2d 459, 170 A.L.R. 1425 (1947); *State ex rel. State Toll Bridge Authority v. Yelle,* 32 Wn.2d 13, 200 P.2d 467 (1948); *State ex rel. State Fin. Comm. v. Yelle,* 33 Wn.2d 940, 207 P.2d 730 (1949); *State ex rel. Troy v. Yelle,* 36 Wn.2d 192, 217 P.2d 337 (1950); *State ex rel. State Employees' Retirement Bd. v. Yelle,* 38 Wn.2d 70, 227 P.2d 745 (1951); *State ex rel. Troy v. Martin,* 38 Wn.2d 501, 230 P.2d 601 (1951); *State ex rel. Eastvold v. Yelle,* 46 Wn.2d 166, 279 P.2d 645 (1955); *State ex rel. State Bldg. Financing Authority v. Yelle,* 47 Wn.2d 705, 289 P.2d 355 (1955); *State ex rel. Eastvold v. Maybury,* 49 Wn.2d 533, 304 P.2d 663 (1956); *State ex rel. O'Connell v. Meyers,* 51 Wn.2d 454, 319 P.2d 828 (1957); *State ex rel. O'Connell v. Yelle,* 51

It is true, as the majority states, that none of these cases was a damage action. It is also true that none of them was an action to compel forfeitures or recover penalties or for restitution. Most of our cases were obviously test cases wherein one state officer, usually the Attorney General, sought to restrain another officer from doing some allegedly illegal act or to compel him to perform his duty. Insofar as the research of those involved in this appeal has revealed, this case is unique in this jurisdiction. Cases cited, decided under different statutes and constitutional provisions, are of little assistance in interpreting our own laws. The fact that the suit is unique does not make the statutory provision any the less applicable. Its terms are certainly broad enough to serve the occasion.

If the legislature considers it to be in the public interest to place a limitation upon the kinds of actions which the Attorney General is required to defend, it has the means of making that intention clear. The statutes before us do not exhibit such a legislative purpose.

I would reverse the order of the trial court and order that the writ be granted. If the Attorney General believes that none of his staff is capable of providing the appellant a fair

Wn.2d 620, 320 P.2d 1086 (1958); *State ex rel. State Toll Bridge Authority v. Yelle,* 54 Wn.2d 545, 342 P.2d 588 (1959); *State ex rel. State Toll Bridge Authority v. Yelle,* 56 Wn.2d 86, 351 P.2d 493 (1960); *State ex rel. State Toll Bridge Authority v. Yelle,* 61 Wn.2d 28, 377 P.2d 466 (1962); *State ex rel. State Fin. Comm. v. Martin,* 62 Wn.2d 645, 384 P.2d 833 (1963); *State Highway Comm'n v. O'Brien,* 83 Wn.2d 878, 523 P.2d 190 (1974); *State Higher Educ. Assistance Authority v. Graham,* 84 Wn.2d 813, 529 P.2d 1051 (1974).

Following are cases in which special assistant attorneys general were appointed to represent the defending officers or agencies: *State ex rel. State Toll Bridge Authority v. Yelle,* 32 Wn.2d 13, 200 P.2d 467 (1948); *State ex rel. Troy v. Yelle,* 36 Wn.2d 192, 217 P.2d 337 (1950); *State ex rel. Eastvold v. Maybury,* 49 Wn.2d 533, 304 P.2d 663 (1956); *State ex rel. O'Connell v. Meyers,* 51 Wn.2d 454, 319 P.2d 828 (1957); *State ex rel. O'Connell v. Yelle,* 51 Wn.2d 620, 320 P.2d 1086 (1958); *State ex rel. State Toll Bridge Authority v. Yelle,* 54 Wn.2d 545, 342 P.2d 588 (1959); *State ex rel. State Toll Bridge Authority v. Yelle,* 61 Wn.2d 28, 377 P.2d 466 (1962); *State Highway Comm'n v. O'Brien,* 83 Wn.2d 878, 523 P.2d 190 (1974); *State Higher Educ. Assistance Authority v. Graham,* 84 Wn.2d 813, 529 P.2d 1051 (1974).

and diligent defense, he should appoint a special assistant to provide the representation which the statute requires.

HICKS, J., concurs with ROSELLINI, J.