[No. 31598. Department One. February 15, 1951.]

THE STATE OF WASHINGTON, *on the Relation of the State Employees' Retirement Board, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*The Attorney General* and *Daniel L. Sullivan, Jr., Assistant,* for relator.

*Fred L. Harlocker, Assistant Attorney General,* for respondent.

SCHWELLENBACH, C. J.—Harold L. Ward was employed by the auditor of King county and became a contributing member of the state employees' retirement system September 1, 1948. February 20, 1949, he was granted a leave of absence due to illness, and became separated from active service with King county.

June 2, 1949, the state retirement board received from Mr. Ward an application for disability retirement, claiming total disability for duty as the natural and proximate result of the actual performance of duty while in the service of his employer without negligence on his part. The nature of the disability was described as heart disease. Robert L. Morris,

[1]Reported in 227 P. (2d) 745.

auditor of King county, certified to the board that the claimant was employed as an examiner of all county officers, which required the carrying of large bound volumes every day going up and down stairs; that the disability claimed was sustained as the natural and proximate result of claimant's work.

Also accompanying the application were the affidavits of Dr. H. J. Green, of Seattle, who stated that he attended the applicant, first on January 28, 1949, and last on May 24, 1949, and described the injury as heart disease; and of Dr. George Capaccio, of Seattle, who stated that he attended the applicant first on February 4, 1949, and last on May 24, 1949, and described the injury as heart disease.

There were also affidavits of the chief examiner and another examiner of the auditor's office, who described the work of Mr. Ward in carrying the heavy record books up and down stairs and also that he performed extra and arduous duties in connection with an election.

June 7, 1949, Dr. Earnest E. Jones, medical adviser of the board, sent the following report:

"June 7, 1949

"State Employees' Retirement Board
215 East Fifth Avenue
Olympia, Washington
"Gentlemen:

"I have examined the Application for Disability Retirement of Harold L. Ward, dated May 18, 1949, along with Attending Physicians' Reports of Disability submitted by Dr. H. J. Green and Dr. George D. Capaccio, Seattle, Washington, dated May 24, 1949, and May 27, 1949, respectively.

"In my opinion the following facts are established:

"1. The applicant had rheumatic heart disease prior to the development of his present disability.

"2. The applicant has been under unusual physical strain of extra long hours of work and extra ordinary physical exertion. With such a pre-existing heart defect as rheumatic disease, it is possible for the unusual physical strain placed upon his heart by the activities descrebed in his application to have caused his present disability.

"3. The applicant is totally and permanently disabled and incapacitated for further duty, in his present position, be-

cause of coronary heart disease. A continuation of such activities would be likely to cause a more serious condition, namely, coronary occlusion.

> "Respectfully submitted,
> (Signed) Earnest E. Jones, M. D.
> EARNEST E. JONES, M. D.
> Medical Adviser"

January 20, 1950, the executive secretary of the board requested Dr. Jones to review the facts and medical evidence and inform it whether or not he could state "that the disability complained of is the probable result of the service activities established by the supporting papers." The same day the executive secretary requested Dr. Capaccio and Dr. Green to answer the following questions:

"A. The disability of claimant Harold L. Ward is the direct result of performance of his duty. Yes or No.

"B. It is probable that the disability complained of is the result of performance of duty. Yes or No.

"C. It is possible that the disability complained of is the result of performance of duty. Yes or No."

Both doctors answered "Yes" to Question "C," and did not reply to Questions "A" and "B." Dr. Jones then, on January 31, 1950, reported to the Board:

> "January 31, 1950

"State Employees' Retirement Board
215 East Fifth Avenue
Olympia, Washington

> Re: Harold L. Ward, Member No. 14818

"Gentlemen:

"I have reviewed the Application of the above member, with its supporting statements, including Attending Physicians' Reports. They indicate a long period of unusual physical strain and extra long hours of hard work. Such conditions are likely to result in the disabling condition which has caused his incapacity for further duty. Therefore, in my opinion, it is highly probable that his present disability resulted from extraordinary physical strain affecting his heart, and was caused by the performance of his duties.

> "Respectfully submitted,
> (Signed) Earnest E. Jones, M. D.
> EARNEST E. JONES, M. D.
> Medical Adviser"

August 7, 1950, Dr. Jones certified:

"I hereby certify that, in my opinion, the above named member is totally incapacitated for the further performance of his duty to his employer and that he should be retired.

"(Signed) Earnest E. Jones, M. D."

September 27, 1950, the board made the following order:

"Application No. ........................ submitted by Harold L. Ward, Member No. 14818, in accordance with the above certifications is approved and, subject to the provisions of Chapter 274, Laws of 1947, as amended, a monthly disability retirement allowance of $150.00, with payments beginning as of April 1, 1949, to the said member is hereby authorized.

"Date September 27, 1950.     RETIREMENT BOARD

(Signed)  William A. Sullivan
Chairman"

Cliff Yelle, state auditor, refused to issue warrants on the above record and, upon application of the attorney general, the chief justice issued an order requiring respondent to show cause why a writ of mandate should not issue.

Rem. Supp. 1949, § 11072-21, provides:

"Subject to the provisions of sections 32 and 33, upon application of a member, or his employer, a member who becomes totally incapacitated for duty as the natural and proximate result of the actual performance of duty, while in the service of an employer, without willful negligence on his part, shall be retired: *Provided,* The Medical Adviser after a medical examination of such member shall certify in writing that such member is mentally or physically totally incapacitated for the further performance of his duty to his employer and that such member should be retired: *And Provided Further,* That the Retirement Board concurs in the recommendation of the Medical Adviser. . . ."

■ Under the statute, before a member can be retired, it must be determined that he has become totally incapacitated for duty *as the natural and proximate result of the actual performance of duty,* while in the service of an employer, without willful negligence on his part. It is true that the act does not specifically require the board to make such a finding. However, it is the board's duty, when certain facts exist, to retire a member. Those facts must first be determined by the board before it can take any action.

No such determination was made by the board. In fact, on the record, it could not have been made. All that the board had before it was the fact that the applicant had a pre-existing heart ailment, and that he had carried heavy books up and down stairs. In addition there were statements by Dr. Capaccio and Dr. Green that it is *possible* that the disability complained of is the result of the performance of duty, and the statement of Dr. Jones, the medical adviser, that it is *highly probable* that the disability is the result of performance of duty. On such a record, a trier of facts could do no more than speculate as to what was the natural and proximate result of the actual performance of duty. The board did not have before it sufficient facts to make such a determination.

The act provides that "the Medical Adviser after a medical examination of such member," shall, before a member is to be retired, certify that he is physically totally incapacitated for further performance of his duty. The medical examiner in this instance never conducted a medical examination of the applicant. Relator contends that a personal examination by the medical examiner is not contemplated nor required by the act. Rem. Supp. 1949, § 11072-32, providing for re-examination of disability beneficiaries, states: "such examination to be made *by or under the direction of the medical adviser* at the place of residence of said beneficiary, or other place mutually agreed upon." (Italics ours.)

We cannot write a new law for the legislature. We can merely decide what it meant by the language it used. Considering both sections 11072-21 and 11072-32, we have no hesitancy in deciding that it was the intention of the legislature that, in the first instance, before a member could be retired there must be a medical examination of such member by the medical adviser, and that, upon a re-examination, it can then be made by or under the medical adviser's direction.

We do not believe it was the intention of the legislature to give *carte blanche* power to the board to arbitrarily grant disability retirement, or to arbitrarily refuse to grant disa-

bility retirement, to members without the possibility of any review of its action in the event of an abuse of discretion on its part. We are not here reviewing the discretion of the board. We are merely holding that it did not act within the manner provided by the legislature.

The writ of mandate is denied and the cause remanded to the state employees' retirement board to proceed in accordance with the views expressed herein.

BEALS, MALLERY, HILL, and DONWORTH, JJ., concur.