494

[No. 24203-6-II. Division Two. April 21, 2000.]
BOYD MARLER, *Appellant,* v. THE DEPARTMENT OF RETIREMENT SYSTEMS, *Respondent.*

*Michael S. Lind* of *Vail & Associates*, for appellant.
*Christine O. Gregoire, Attorney General*, and *Jerome E. Westby, Assistant*, for respondent.

BRIDGEWATER, J. — Boyd Marler appeals the decision of the superior court affirming the Department of Retirement Systems' denial of his application for a duty disability retirement allowance from the Public Employees' Retirement System, Plan 1 (PERS 1). We hold that his claim is barred. Marler did not file within the two-year time period as required by RCW 41.40.200(1)(c), as measured from the time that he knew or should have known that he could not return to his former job or other qualified work—that is, when he knew or should have known that he was "totally incapacitated." We also hold that this period was not automatically extended by his receipt of a final determination that he was "permanently totally disabled" under a Department of Labor and Industries' workers' compensation determination. We affirm.

Marler was hired by Pierce County as a road maintenance technician on June 21, 1976. Marler's duties consisted of general maintenance work. On December 6, 1988, Marler was injured in the course of his employment when he sustained an injury to his lower back while cutting brush with a chain saw. He was unable to continue working. Three days later, Dr. David W. Millet diagnosed him with acute lumbar muscle spasm. Marler did not return to work and continued to see Dr. Millett.

Marler received time loss compensation from a workers' compensation claim with the Department of Labor and Industries (L&I) as a temporary totally disabled worker until he attempted to return to work on April 23, 1990, which resulted in aggravation of his injury. Pierce County terminated Marler on that day and referred to Marler's termination as "medically retired."

In May 1990, Marler's L&I claim was closed without further time loss paid and without a permanent partial disability payment. Later, L&I reopened his claim due to the aggravation of his industrial injury. L&I paid Marler for more time loss and awarded a permanent partial disability.

Marler successfully appealed this decision and on March 1, 1993, the Board of Industrial Insurance Appeals found that Marler was permanently and totally disabled.

On March 24, 1994, Marler applied to the Department of Retirement Systems (the Department) for a duty disability retirement allowance under PERS 1. This was more than two years after his injury and unsuccessful attempt to return to work, but less than two years from the final L&I decision. Marler wanted to obtain a full service retirement allowance that would include the period of time he was separated from service due to his disability. A Department examiner denied his application because he did not file his claim within two years after the date of his disability injury as required under RCW 41.40.200(1)(c).

Marler appealed this decision, and on September 6, 1995, an Administrative Law Judge affirmed the denial of disability retirement benefits. Then, Marler filed a Petition for Review. There was a factual hearing that concerned whether Marler could return to his former work, and the Director found that he knew he could not return to his former work on April 23, 1990. The Department affirmed the denial of benefits in the Director's Final Order dated June 28, 1996.

Marler requested judicial review in the Pierce County Superior Court pursuant to RCW 34.05.570. On June 19, 1998, the judge entered a final order affirming the Director's denial of benefits. Marler moved for reconsideration, and the motion was denied. Marler appeals.

■ The Administrative Procedure Act governs final decisions of the Director of the Department of Retirement Systems. RCW 34.05.570(3). The court may grant relief if the agency decision is affected by error of law. RCW 34.05.570(1). Substantial weight is accorded to the agency's view of the law if it falls within the agency's special field of expertise. *Macey v. Department of Employment Sec.*, 110 Wn.2d 308, 313, 752 P.2d 372 (1988); *Franklin County*

*Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). However, interpretation of a statute is a matter within the conventional competence of the court rather than the special competence of the administrative agency. *Sellers*, 97 Wn.2d at 325-26; *American Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 5, 802 P.2d 784 (1991).

## I. Statute of Limitations

This case involves the statutory construction of RCW 41.40.200. This PERS 1 statute allows vested members, like Marler, to apply for a duty disability retirement allowance when total incapacitation for duty results from an accident occurring in the actual performance of duty. RCW 41.40.200.[1] PERS 1 was not intended as a disability insurance policy or as a supplement to the job-related disability compensation provisions of the State workers' compensation laws, Title 51 RCW. Its duty-related disability retirement provisions were designed primarily to maintain a member's ability to continue earning service credit toward a service retirement when that member has been forced to resign from the productive workforce due to a job-related disability. *See* RCW 41.40.038.

The PERS 1 statute imposes several preconditions on the Department's authority to entertain an application for a PERS 1 duty disability retirement allowance. These preconditions include: (a) the Department's medical advisor must certify that the applicant is totally incapacitated for the further performance of his or her duty and should be retired; (b) the Director must approve that certification; and (c) in the case of an accident, the application must be filed "within two years after the date upon which the injury occurred[.]" RCW 41.40.200(1)(c).

The issue in this case is the timeliness of Marler's ap-

---

[1]RCW 41.40.010(28) defines total incapacitation for duty as a "total inability to perform the duties of a member's employment or office or any other work for which the member is qualified by training or experience."

plication under this third precondition. RCW 41.40-.200(1)(c) requires that an application for PERS 1 must be filed within two years from the date that the injury occurred. Here, Marler's injury occurred on December 6, 1988, and he did not file his application within two years of this date. But Marler argues that he falls under an exception that this court recognized to the strict calculation of the statutory two-year period in *Wagner v. State Public Employees Retirement Board*, 17 Wn. App. 164, 561 P.2d 1131 (1977).

In *Wagner*, the worker, a PERS 1 member, injured his knee during the course of his employment. After taking a few weeks leave following surgery for his knee injury, the worker returned to work and continued his employment in the same position. About three years later the worker was terminated due to his inability to engage in all aspects required of his position. The worker filed a claim for duty disability benefits at that time, which was more than two years after the date of his injury. The Retirement Board denied the worker's claim as untimely because it was not filed within the two-year statute of limitations in RCW 41.40.200(1)(c). We reversed the Board's decision and held that the "date upon which the injury occurred" in RCW 41.40.200(1)(c) means "not only the day of happening of the accident, or event, but the time when the consequences bring the condition within the scope of constituting a 'compensable injury.' " *Wagner*, 17 Wn. App. at 168. We noted that the worker in *Wagner* could not have filed a valid claim because he was working during the two years after his injury, except for a few weeks off when he was convalescing. He could not have filed a valid claim because benefits cannot accrue under the retirement system until a worker has terminated his or her service to the governmental agency. *Wagner*, 17 Wn. App. at 168. Thus, we found that at first the worker's injury in *Wagner* was not apparently incapacitating because he was able to return to work within a few weeks of his surgery. Then, the worker's injury became compensable after he was terminated due to his limitations from his knee injury. We thus looked to see

when the injury was apparently incapacitating, in other words, when the worker became aware or should have become aware that he was "totally incapacitated."

We conclude that although the PERS 1 statute requires a worker to file within two years after an injury, *Wagner* provides a limited exception that this two-year period will not start until the injury incapacitates the worker such that the worker knows, or should have known, that he or she cannot return to work.

In this case, Marler was injured on December 6, 1988, and he returned to work for five hours on April 23, 1990. There was an evidentiary hearing as to when it was apparent to Marler that he could no longer perform his duties. The Director found that it was apparent to Marler that he could no longer return to his work upon his termination on April 23, 1990. No error is assigned to this finding, and thus it is a verity. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). The Director concluded that Marler's injury became compensable or apparently incapacitating when he was terminated by Pierce County on April 23, 1990, and did not return to work thereafter.

Marler argues that because he felt that he could work in some limited capacity prior to March 1, 1993, he was not totally disabled until that date. There is no authority or hint of legislative intent that the two-year statute of limitations should begin to run only when an employee subjectively believes that he or she no longer has the capacity to work. Here, unlike *Wagner,* Marler does not contend that initially his injury was not disabling and only later progressed to the point that it became disabling. Further, unlike *Wagner,* Marler's postinjury work did not prevent him from applying for disability retirement within the two-year period. Marler knew that his examining physicians all considered his medical condition to be fixed and stable after his second back injury in April 1990. Because of his back problems, Marler could not return to his former work after that second injury. Marler testified that he was will-

ing to consider other types of employment, but he was unable to come up with anything. As a result, he did not attempt other jobs.

Marler misconstrues *Wagner* by stating that it holds that no worker's injury can be compensable or apparent until a medical advisor certifies that the injury is totally incapacitating. While it is true that the worker's injury in *Wagner* became apparent and compensable when a medical advisor certified that he was totally incapacitated, that is because the certification occurred on the same day that he was terminated—the same day as his last day of work. *Wagner*, 17 Wn. App. at 166, 169.

Marler asserts a similar argument again when he cites *State ex rel. State Employees' Retirement Board v. Yelle*, 38 Wn.2d 70, 227 P.2d 745 (1951), and argues that a medical advisor must make a certification before a member applies for a PERS I retirement allowance. Marler's reliance on *Yelle* is misplaced. In *Yelle*, after the member filed his application, the Department's medical advisor never conducted a personal medical examination of the applicant. Instead, the Department's medical advisor relied on other doctors' examinations, which found that it was highly probable that the member was disabled as a result of performance of duty. The court held that a medical advisor from the Department must examine and certify that the applicant is totally incapacitated before the applicant could be retired and start receiving benefits for disability. *Yelle*, 38 Wn.2d at 74. Contrary to Marler's assertions, *Yelle* does not require a medical advisor to make such a certification before a member applies for retirement benefits. Therefore, neither *Yelle* nor *Wagner* holds that a medical advisor's certification of total incapacitation is required before a member applies for retirement benefits.

■ In accord with *Wagner*, we hold that a PERS 1 member's injury becomes compensable the date the injury occurs or, if a member is able to return to work for a period of time, the date that the member is or should be aware that he or she is unable to return to the prior employment

or other qualified work because of the injury. Thus, we agree with the Director's Final Order that found *Wagner* operates in this case only to shift the beginning of the two-year period from December 6, 1988 (the injury date) to April 23, 1990 (the date of Marler's second injury and his last day of employment). Because Marler did not file his application until March 24, 1994, almost four years after his injury was compensable, we hold that the Director was correct in denying Marler's application.

### PERS 1 and L&I Workers' Compensation

Marler contends that the PERS 1 statutes and the L&I workers' compensation statutes must be read in harmony and must not produce inconsistent effects. In asserting these arguments of statutory construction, Marler argues that to be "totally incapacitated" under PERS 1 is equivalent to being "permanently totally disabled" under L&I workers' compensation. Under this reasoning, Marler could not be "totally incapacitated" under PERS 1, prior to March 1, 1993, because the L&I determined he was not "permanently totally disabled" until that date.[2] Marler's argument exceeds any authority and goes beyond the previous interpretation of these acts and their relationship.[3]

Marler argues that the L&I classification of Marler as a temporarily disabled worker during certain periods should be binding on the Department. Marler argues that he could not be totally incapacitated during the time period

---

[2]Throughout this litigation, Marler has framed this argument as res judicata, collateral estoppel, or harmonious statutory interpretation of the PERS 1 and L&I workers' compensation statutes. Regardless of how Marler frames the issue, these statutes show that PERS 1 and L&I workers' compensation have different standards and different requirements for workers who are injured in an accident in the course of employment.

[3]Marler contends that this court should equate RCW 41.40.200's single reference to the L&I workers' compensation statutes in regard to the definition of occupational disease with other workers' compensation standards regarding incapacitation from an accident. Marler's assertion is unpersuasive because the statute is explicit in including reference to workers' compensation definitions for occupational diseases and there is no reference to workers' compensation standards for incapacity from workplace accidents.

in question under PERS 1 if L&I found that he was only temporarily disabled. Marler argues that L&I's determination that he was employable and not permanently totally disabled is binding on the Department. He argues that because the Department is bound it cannot find him unemployable until after March 3, 1993, because this L&I determination stood until it was reversed by the L&I Board on March 3, 1993. In his brief, Marler essentially asserts a res judicata claim citing *Marley v. Department of Labor & Industries*, 125 Wn.2d 533, 886 P.2d 189 (1994). Res Judicata applies only where there is identity of 1) subject matter, 2) cause of action, 3) persons or parties, and 4) the quality of person against whom the claim is made. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 72 Wn. App. 91, 95, 863 P.2d 604 (1993) (quoting *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983)).

■ Here, the subject matter is not the same. In *Cascade Nursing Services v. Employment Security Department*, 71 Wn. App. 23, 856 P.2d 421 (1993), *review denied*, 123 Wn.2d 1013 (1994), the court rejected an argument that a decision over the coverage of nurses under L&I laws should be applied to Employment Security. The court found that the tests for coverage were different. Thus, in this case if the tests for L&I permanent total disability and PERS 1 total incapacity are different, then the subject matter is different and res judicata does not apply.

Contrary to Marler's contentions, the standards for L&I permanent total disability and PERS 1 total incapacity are different. The Director noted in the Final Order that when duty-related PERS 1 disability retirement is compared to workers' compensation, it is evident that there are two distinct requirements of proof. The Director compared PERS 1, which addresses the availability of a duty disability for a member who has become totally incapacitated for the performance of any work for which the member is qualified by training or experience, *see* RCW 41.40.010(28) and RCW 41.40.200, with workers' compensation, which addresses the availability of a workers' compensation pen-

sion for permanent total disability, where the worker is permanently incapacitated from performing any work at any gainful occupation, see RCW 51.08.160. PERS 1 relates to duty-related disability, while workers' compensation deals with disability that prevents the worker from performing any type of work. Further, PERS 1 provides for periodic examinations to determine whether the worker's condition has changed. RCW 41.40.310. Thus, PERS 1 does not require proof of permanent impairment.

Marler argues that under the Director's interpretation, the two statutes are impermissibly inconsistent. But because the two statutes have dissimilar standards and definitions for incapacitation, different results under these different standards are not inconsistent. Thus, a worker could be "permanently partially disabled" but not "permanently totally disabled" under L&I, while at the same time "totally incapacitated" under PERS 1. Therefore, it is not inconsistent under the two statutory schemes for the Department to find that Marler's total incapacity was apparent under PERS 1 during a time period that L&I held Marler was only permanently partially disabled. The issue is one of fact as to when it was apparent to Marler that he was "totally incapacitated."[4]

## II. Collateral Source Evidence

Marler contends that the Director inappropriately considered evidence that Marler was receiving an L&I pension, which was barred by the collateral source rule as an outside source of income. Marler cites a case where the Supreme Court held that the collateral source rule applies in industrial insurance claim proceedings to bar evidence of an injured worker's collateral sources of income or benefits. *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 953 P.2d 800

---

[4]It is appropriate to consider what effect L&I's holding had as it pertained to when it was apparent that the claimant was "totally incapacitated." Here, there was no challenge to the sufficiency of the evidence as to when he knew that he could not return to his former job or other qualified work under the PERS 1 provision.

(1998). The court in *Johnson* found that a workers' compensation claim is similar to a personal injury claim, and because the collateral source rule bars evidence of collateral benefits in a personal injury claim, it also bars evidence of collateral benefits in a workers' compensation claim. *Johnson*, 134 Wn.2d at 799-800. Marler, however, does not provide any authority for his contention that the collateral source rule applies in retirement cases before the Department.

■ Even if the collateral source rule does apply, Marler cannot use its protection because he has "opened the door" to evidence of collateral benefits. The court in *Johnson* noted that an injured party may "waive the protections of the collateral source rule by opening the door to evidence of collateral benefits." *Johnson*, 134 Wn.2d at 804. Here, Marler opened the door by continually stating that the Board of Industrial Insurance Appeals granted him an L&I pension. Marler does not argue that the Director should not have considered the L&I decision, which granted him a pension and found that he was permanently totally disabled. In fact, Marler continually cites to this L&I decision in support of his appeal. Yet Marler criticizes the Director for referring to Marler's L&I claim and to the fact that Marler was successful and awarded a pension. We hold that the Director did not improperly consider evidence of Marler's workers' compensation award because Marler opened the door to this evidence by continually referring to the decision that awarded the workers' compensation pension. Thus, Marler waived any protections the collateral source rule could afford.

Affirmed.

ARMSTRONG, C.J., and MORGAN, J., concur.

Review denied at 141 Wn.2d 1012 (2000).