159 P.3d 479 (2007)
The Honorable Richard B. SANDERS, Petitioner,
v.
The STATE of Washington, Respondent.
Nos. 32520-9-II, 34130-1-II.
Court of Appeals of Washington, Division 2.
June 12, 2007.
Paul J. Lawrence, Matthew J. Segal, Kirkpatrick & Lockhart Preston Gates Ell, Seattle, WA, for Petitioner.
Peter R. Jarvis, Peter R. Jarvis, Hinshaw & Culbertson, Portland, OR, Timothy George Leyh, Randall Thor Thomsen, Danielson Harrigan Leyh & Tollefson LLP, Seattle, WA, for Respondent.
*480 SEINFELD, J.P.T.[1]
¶ 1 Washington State Supreme Court Justice Richard Sanders seeks reimbursement from the State of Washington for the attorney fees he incurred while defending himself before the Commission on Judicial Conduct (Commission) and while prosecuting this appeal. Before the Commission proceedings commenced, the attorney general rejected Justice Sanders' request for legal representation. The Commission later ruled that Justice Sanders had violated the Canons of Judicial Conduct and the Supreme Court upheld the Commission's ruling.
¶ 2 The issue before us is whether the relevant statutes granted the attorney general the discretion to refuse representation and, if so, whether they require the State to now reimburse Justice Sanders for his attorney fees. We hold that under chapter 42.52 RCW, the attorney general has the discretion to decline representation, subject to a duty to reimburse a judge for defense costs in the event that the Commission later dismisses the charges or exonerates the judge of all violations of the Canons. Thus, we affirm the trial court's ruling dismissing Justice Sanders' declaratory judgment action.

FACTS
¶ 3 On January 27, 2003, Justice Sanders visited the Special Commitment Center (SCC) on McNeil Island. Following that visit, a complaint was filed with the Commission alleging that Justice Sanders had had contact with SCC residents who had cases pending before the Washington Supreme Court. The Commission investigated the complaint and subsequently charged Justice Sanders with violating Canons 1, 2, and 3(A)(4) of the Code of Judicial Conduct.
¶ 4 During the Commission investigation, Justice Sanders asked the attorney general to provide him with a defense at public expense. The attorney general declined, stating that to authorize Justice Sanders' defense would require the State to "make an exception to the long standing policy and interpretation of the statutes that govern use of public funds to defend state officers and employees." 1 Clerk's Papers (CP) (No. 34130-1-II) at 73. The attorney general said that it would defer determining Justice Sanders' eligibility for a public defense until the Commission proceedings concluded; the attorney general had followed this process in Justice Sanders' previous case before the Commission. See In re Disciplinary Proceeding Against Sanders, 135 Wash.2d 175, 955 P.2d 369 (1998). (After the Supreme Court overturned a Commission violation ruling in the earlier proceeding, the superior court ruled that Justice Sanders was entitled to reimbursement of his defense costs and to an award of fees and costs for bringing the recovery action. The State did not appeal that ruling.)
¶ 5 A week after the Commission filed the charges at issue here, Justice Sanders brought a declaratory judgment action against the State, claiming that the public owed him a defense. The trial court denied the parties' cross motions for summary judgment, ruling that state law required the attorney general to defend state officials acting in their official capacity except in the case of malfeasance or misfeasance; the trial court determined that there was a material issue of fact as to whether Justice Sanders committed misfeasance during his visit to the SCC. This court then granted Justice Sanders' motion for discretionary review of that ruling.
¶ 6 On April 8, 2005, before this court had the opportunity to review the trial court's ruling, the Commission issued a decision holding that Justice Sanders' actions at the SCC violated Canons 1 and 2(A) of the Code of Judicial Conduct. The Commission decision stated that Justice Sanders
violated Canon 1 by failing to enforce high standards of judicial conduct and also violated Canon 2(A) by failing to promote public confidence in the integrity and impartiality of the judiciary.
2 CP (No. 34130-1-II) at 234.[2] The Commission admonished Justice Sanders and encouraged *481 him "to exercise utmost caution in considering his involvement in matters concerning the issue of volitional control presented by sexual predators residing at the Special Commitment Center." 2 CP (No. 34130-1-II) at 237-38.
¶ 7 This court then granted Justice Sanders' motion to stay review of the pending appeal, thereby allowing the trial court to apply the Commission's findings to its summary judgment ruling. Following remand to the trial court, Justice Sanders brought a discovery motion, seeking information about how the State has previously interpreted its duty to defend with regard to other state officials.[3] Justice Sanders also appealed the Commission's decision by filing a Notice of Contest with the Washington Supreme Court.
¶ 8 The State filed motions to quash the discovery requests and to stay the trial court proceedings until the State Supreme Court decided the Commission appeal. Citing concerns of judicial economy, the trial court denied the State's motion to quash in part, but granted the stay, concluding that the final decision on factual issues regarding misfeasance would ultimately determine the State's duty to defend.
¶ 9 Justice Sanders then sought discretionary review of the order granting the stay. He also moved to lift this court's stay of his prior appeal and to expand that appeal to include the trial court's stay order. This court granted Justice Sanders' motions.[4]
¶ 10 Meanwhile, the Supreme Court issued its opinion in October 2006, upholding the Commission's decision and its sanction of admonishment. In re Disciplinary Proceeding Against Sanders, 159 Wash.2d 517, 145 P.3d 1208 (2006). The Supreme Court found that Justice Sanders' conduct at the SCC created an appearance of partiality as a result of ex parte contact in violation of Canons 1 and 2(A). Sanders, 159 Wash.2d at 519-20, 522, 145 P.3d 1208. The Supreme Court denied reconsideration on March 7, 2007.

DISCUSSION
¶ 11 The parties have supported their respective positions regarding the State's duty to defend with citations to statutory provisions, case law, policy arguments, and the contention that the State's role is comparable to that of an insurer.

I. RCW 43.10.030 AND RCW 43.10.040
¶ 12 The Washington State Constitution provides that "[t]he attorney general shall be the legal advisor of the state officers, and shall perform such other duties as may be prescribed by law." CONST. art. III, § 21. The legislature enacted a statutory scheme in accordance with article III, section 21; this scheme describes when the attorney general must provide legal representation for state elected officials, state officers, and state employees. State v. Herrmann, 89 Wash.2d 349, 352, 572 P.2d 713 (1977).
¶ 13 Justice Sanders' principal argument is that under two of these statutes, the attorney general had a duty to commence defending him at the time the Commission filed the charges. The first statute, RCW 43.10.030, sets forth the attorney general's powers and duties. Subsection 3 provides that the attorney general shall:
Defend all actions and proceedings against any state officer or employee acting in his official capacity, in any of the courts of this state or the United States.
This territorial statute, which was first passed in statehood in 1891,[5] remained unchanged until 1975 when the words "or employee acting" were added. Laws of 1975, ch. 40, § 5(3); Herrmann, 89 Wash.2d at 352, 572 P.2d 713.
¶ 14 The second statute Justice Sanders cites is RCW 43.10.040. Entitled "Representation of boards, commissions and agencies," it provides as follows:

*482 The attorney general shall also represent the state and all officials, departments, boards, commissions and agencies of the state in the courts, and before all administrative tribunals or bodies of any nature, in all legal or quasi legal matters, hearings, or proceedings, and advise all officials, departments, boards, commissions, or agencies of the state in all matters involving legal or quasi legal questions, except those declared by law to be the duty of the prosecuting attorney of any county.
This statute was passed in 1941 to stop state agencies from the then proliferating practice of hiring private attorneys; it placed the authority for representing state agencies in the attorney general. Herrmann, 89 Wash.2d at 354, 572 P.2d 713; Laws of 1941, ch. 50.[6]
¶ 15 The trial court in this case concluded that while these statutes generally require the attorney general to defend judges in proceedings before the Commission, there is an exception where the judge committed malfeasance or misfeasance. Justice Sanders contends this was error; he argues that a judicial officer who shows that he was a public official acting in his official capacity at the time of the alleged wrongdoing is entitled to a public defense. As there is no dispute that Justice Sanders is a state official and as the Commission found that he was acting in his official capacity when he visited the SCC, Justice Sanders contends that RCW 43.10.030 and .040 imposed an absolute duty on the attorney general to defend him and that there is no basis to look outside these statutes. Sanders, 159 Wash.2d at 523, 145 P.3d 1208 (Justice Sanders' actions were undertaken in the context of his judicial duties).
¶ 16 Both RCW 43.10.030 and .040 use the word "shall" in setting forth the attorney general's duty to defend. Generally, the legislature's use of the word "shall" in a statute shows an intent to impose a mandatory duty on a state agency. Washington State Coalition for the Homeless v. Dep't of Soc. & Health Servs., 133 Wash.2d 894, 907-08, 949 P.2d 1291 (1997); see also State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (when statutory language admits of only one meaning, the legislative intent is apparent, and the courts will not construe the statute otherwise). Nonetheless, the State contends that there is an exception to this broad statutory duty to defend.
¶ 17 Article III, section 21, states that the attorney general "shall be the legal advisor of the state officers." Article IV, section 31, which established the Commission, is silent on the subject of legal representation during judicial disciplinary proceedings. See Laws of 1980, Sub. HJR No. 37, approved November 4, 1980. Nor does any other constitutional provision provide an exception.
¶ 18 The State asks us to examine the rest of the statutory scheme by which the legislature has given effect to article III, section 21, of the state constitution in determining the scope of its duty to defend. See Harmon v. Dep't of Soc. & Health Servs., 134 Wash.2d 523, 530, 951 P.2d 770 (1998) (in construing a statute, courts may look to other statutes dealing with the same subject matter to discern legislative intent). It points to statutes showing that the legislature has tempered its broad command to defend in RCW 43.10.030 and .040 with grants of discretion limiting the attorney general's duty to defend under some circumstances.
¶ 19 An example, RCW 4.92.060, provides that when a state officer is sued for damages arising from "acts or omissions while performing, or in good faith purporting to perform, official duties," such officer may ask the attorney general to authorize a defense at the State's expense. If the attorney general finds that the officer's acts "were, or were purported to be in good faith, within the scope of that person's official duties," the request for a public defense shall be granted. RCW 4.92.070; see Herrmann, 89 Wash.2d at 356, 572 P.2d 713 (attorney general has sole discretion under RCW 4.92.070 to determine whether employee acted or purported *483 to act in good faith within scope of his duties).
¶ 20 Similarly, the attorney general may have a duty to defend a state officer charged with a crime a rising out of the performance of an official act. RCW 10.01.150. But this duty turns on an agreement between the officer's employing agency and the attorney general that the officer's conduct was "in accordance with established written rules, policies, and guidelines of the state or a state agency and the act performed was within the scope of employment." RCW 10.01.150. These statutes demonstrate that in the criminal and tort context, the legislature intended to limit the attorney general's broad duty to defend set forth in RCW 43.10.030 and .040 to situations where the defendant state officer was either acting in good faith or in accordance with state law. But neither statute directly applies here where we are considering a request for a defense in a disciplinary proceeding, not a defense to a tort claim or to a criminal charge.

II. CASE LAW
¶ 21 The State also cites case law to support its argument that the attorney general has discretion to determine whether to defend a judge during disciplinary proceedings, pointing to State ex rel. Dunbar v. State Bd. of Equalization, 140 Wash. 433, 249 P. 996 (1926), and Berge v. Gorton, 88 Wash.2d 756, 567 P.2d 187 (1977). Dunbar does not control here because it discussed whether the attorney general had any legal authority to defend in the first instance, and not whether the duty to defend was discretionary. And Berge involved the prosecution of actions and not the defense of state officers.
¶ 22 In Dunbar, the attorney general brought a mandamus action to compel the state board of equalization to issue a tax levy in accordance with recent law. 140 Wash. at 437-38, 249 P. 996. The board of equalization responded that because the attorney general has a constitutional and statutory duty to defend state officers, the attorney general lacks authority to bring an action against state officers. The Supreme Court disagreed, finding that "where the interests of the public are antagonistic to those of state officers . . . it is impossible and improper for the Attorney General to defend such state officers." Dunbar, 140 Wash. at 440, 249 P. 996. The Supreme Court later clarified the Dunbar ruling, explaining that the attorney general may properly represent both sides in an action between the State and one of its officers. Reiter v. Wallgren, 28 Wash.2d 872, 879-80, 184 P.2d 571 (1947).
¶ 23 Berge interpreted RCW 43.10.030(2), which requires the attorney general to "prosecute all actions and proceedings . . . which may be necessary in the execution of the duties of any state officer," as describing a discretionary duty. Berge, 88 Wash.2d at 761-62, 567 P.2d 187. But the critical phrase "which may be necessary," which gives the attorney general discretion to litigate in RCW 43.10.030(2), is absent in RCW 43.10.030(3). Thus, Berge does not support an exception to the broad mandate in RCW 43.10.030(3) regarding the attorney general's duty to defend.
¶ 24 The State also contends that the result in Colby v. Yakima County, 133 Wash. App. 386, 136 P.3d 131 (2006) (Division Three), applies by analogy. In Colby, the Commission had charged a district court judge with engaging in certain improper actions, and Yakima County declined to pay the judge's defense costs during Commission proceedings that led to the judge's resignation. 133 Wash.App. at 388-89, 136 P.3d 131. The Colby court held that the prosecuting attorney had authority under RCW 4.96.041 and the county code to determine that the judge had not performed those actions in good faith within the scope of his judicial duties.[7] 133 Wash.App. at 391, 136 P.3d 131. *484 Consequently, the Colby court upheld the county's refusal to pay the judge's legal fees. 133 Wash.App. at 393-94, 136 P.3d 131.
¶ 25 The facts in Colby bear a resemblance to those here. But the Colby case involved a different statute, a different jurisdiction, and a different legal officerthe county prosecuting attorney as opposed to the state attorney general. Thus, it is not controlling authority here.

III. ETHICS IN PUBLIC SERVICE ACT
¶ 26 The statutes defining the attorney general's duty to defend state officers accused of violating the Ethics in Public Service Act (Act), chapter 42.52 RCW, are relevant. An action under the Act is commenced by filing a complaint. The attorney general's duty to defend the accused state officer or employee does not commence until and unless the following circumstances occur: (1) the ethics board reviews the facts alleged in the complaint and determines without a hearing that there is not reasonable cause to believe that the officer or employee has violated the Act; or (2) following a hearing, the ethics board concludes that the officer or employee did not engage in wrongdoing. RCW 42.52.430(7). Thus, if the Act applies to Commission proceedings, clearly there are limits on the attorney general's duty to defend a judge charged with violating the judicial canons.
¶ 27 The Act's language encompasses Commission proceedings. Not only does the Act include the Commission in its definition of "ethics board" and supreme court justices in its definition of "state officer," RCW 42.52.010(8), it also provides that the Commission "shall enforce this chapter and rules adopted under it with respect to state officers and employees of the judicial branch and may do so according to procedures prescribed in Article IV, section 31 of the state Constitution." RCW 42.52.370. The Act further provides that it "shall be construed liberally to effectuate its purposes and policy and to supplement existing laws as may relate to the same subject." RCW 42.52.901. Thus, although the Commission has adopted its own separate procedural rules for judicial disciplinary proceedings, it seems that the legislature did not intend to exclude either the Commission or judges from the Act, where applying the Act would not be inconsistent with the state constitution, other statutes, or the Commission's rules governing its proceedings and responsibilities. See WAC 292-09-010 (all proceedings involving state employees of the judicial branch shall proceed under the Ethics Act's rules, but all proceedings involving judges shall proceed under the Commission on Judicial Conduct Rules of Procedure (CJCRP)).
¶ 28 Comparing and contrasting the overall schemes for handling ethics complaints under the Act with disciplinary proceedings initiated by the Commission, we find significant parallels. First, every complaint is investigated by an employee of the Commission or ethics board. RCW 42.52.410, .420; CJCRP 17. Second, the ethics board may dismiss the complaint without a hearing, and the Commission may dismiss the complaint without filing a statement of charges. RCW 42.52.425; CJCRP 17. Third, if there is reasonable cause to believe that an officer or employee has violated the Act, the ethics board shall hold a public hearing. RCW 42.52.430(1). Similarly, if there is probable cause to believe that a judge has violated any judicial conduct rules, the Commission schedules a public hearing. CJCRP 17, 24. Fourth, if, following the hearing, the ethics board determines that the officer has not violated the Act, it shall dismiss the complaint, and the attorney general shall represent the officer in any action that might be subsequently commenced based on the facts alleged in the complaint. RCW 42.52.430(6), (7). Similarly, if the Commission determines after the hearing that a judge has not violated the rules of judicial conduct, it also shall dismiss the case. CJCRP 24.
¶ 29 As the State notes, there is no indication from the legislature or the courts that the attorney general's defense obligations vis-á-vis Commission proceedings should differ from its obligations as described in the Act. The Act, in RCW 42.52.430(7), does not *485 require the attorney general to represent a state officer at the outset of an ethics proceeding. Rather, the attorney general's duty to defend a state officer in a subsequent action arises only if the ethics board has exonerated that officer of ethical wrongdoing.
¶ 30 Although the rules governing Commission proceedings do not contemplate subsequent actions after the dismissal of a disciplinary complaint, the State contends that the attorney general's duty to defend during Commission proceedings is similar to the attorney general's duty to defend under RCW 42.52.430(7). This would allow the State the discretion to offer a defense during Commission proceedings if it anticipated that the accused judge might prevail, but the State would have no absolute duty to defend the judge during such proceedings. Instead, the State's duty would be limited to reimbursing the accused judge for defense costs following either the Commission's dismissal of the charges or exoneration of the judge following a hearing. Under this reasoning, here, where the Commission found a violation and the Supreme Court upheld the finding on appeal, the State would have no duty to reimburse Justice Sanders for his defense expenses.
¶ 31 Given that the Commission is required to enforce the Act and the rules adopted under it, and given that the Act is to be construed liberally and is to supplement existing laws relating to the same subject matter, we agree with the State that RCW 42.52.430(7) applies here. And RCW 42.52.430(7) shows a legislative intent to limit the attorney general's duty to defend a judge during Commission proceedings. Thus, the attorney general has the discretion to provide a defense initially or instead to reimburse an accused judge for his or her defense costs later if the judge is exonerated of ethical wrongdoing.

IV. PUBLIC POLICY
¶ 32 Justice Sanders argues that defending state officials at the outset of disciplinary proceedings serves important public policies. As support, he cites language from Filippone v. Mayor of Newton, 392 Mass. 622, 629, 467 N.E.2d 182 (Mass.1984):
As a matter of policy, public indemnification of public officials serves in part to encourage public service. Judgments against such public officials in actions for civil rights or intentional torts could cause financial ruin. This policy would be defeated if the legal expenses of civil rights litigation were to be borne personally throughout years of pretrial activity, trial, and appeal and only later, if at all, reimbursed.
We are not unsympathetic to the concerns expressed in the cited language. But for numerous reasons, this citation is not persuasive here. First, this is not a civil rights case or action for damages. And secondly, we note that Massachusetts, the source of this policy statement, has adopted a statute barring the payment of fees when disciplinary charges are established against a judge. See In re Matter of Brown, 427 Mass. 1015, 1016, 696 N.E.2d 140 (Mass.1998) (citing Mass. Ann. Laws ch. 211C, § 7(15), as prohibiting the payment of fees to judge where disciplinary charges are established); see also In re Matter of Hamrick, 204 W.Va. 357, 360 n. 4, 512 S.E.2d 870 (W.Va.1998) (judicial disciplinary rule states that when judge is exonerated at any stage of disciplinary proceeding, he or she shall be entitled to reasonable attorney's fees paid by the state). Thus, even in Massachusetts, Justice Sanders could not recover his attorney fees.

V. THE STATE AS INSURER
¶ 33 Nor are we persuaded by Justice Sanders' policy argument that the attorney general should assume the role of an insurer and defend a judge who has even a potential claim for a defense under RCW 43.10.030 and RCW 43.10.040. His argument rests largely on authority from other jurisdictions that we do not find persuasive. See, e.g., Frontier Ins. Co. v. State, 87 N.Y.2d 864, 638 N.Y.S.2d 933, 662 N.E.2d 251 (1995) (interpreting Public Officers Law § 17(2)(a), which states that the duty to defend set forth therein "shall not arise where such civil action or proceeding is brought by or on behalf of the state."); City of Tualatin v. City-County Ins. Servs. Trust, 129 Or.App. 198, 204, 878 P.2d 1139 (1994) (holding that statute under which City *486 sought reimbursement from insurer for mayor's defense costs applied to tort claims but not ethics charges), aff'd, 321 Or. 164, 894 P.2d 1158 (1995).
¶ 34 Justice Sanders also assigns error to the trial court's finding that his recovery of defense costs depended on whether he committed willful misfeasance. Given our analysis above, a finding of willful misfeasance is not determinative, and we therefore do not address whether Justice Sanders committed misfeasance when he visited the SCC. Nor need we determine whether the trial court erred in staying the proceedings below.
¶ 35 We affirm the trial court's refusal to award Justice Sanders the costs of his defense during the Commission proceedings and we deny his request for attorney fees at trial and on appeal.
HUNT, P.J., and QUINN-BRINTNALL, J., concur.
NOTES
[1] Judge Karen Seinfeld is serving as a judge pro tempore of the Court of Appeals, Division Two, pursuant to CAR 21.
[2] This language comes from a corrected amended decision that the Commission subsequently issued.
[3] Citing the State's resistance to his discovery requests, Justice Sanders filed a separate lawsuit charging the State with violating the Public Disclosure Act. His appeal of the trial court's ruling in that case is pending.
[4] Commissioner's Order dated February 9, 2006.
[5] Laws of 1891, ch. 55, § 2(3); Herrmann, 89 Wash.2d at 352, 572 P.2d 713.
[6] Sections 2 and 4 of the session law were codified at RCW 43.10.067, which provides that no state officer, agency, board, or commission shall employ an attorney other than the attorney general to perform any duty specified to be performed by the attorney general. Laws of 1941, ch. 50, §§ 2, 4; RCW 43.10.067.
[7] RCW 4.96.041(1) provides that when an action for damages is brought against an officer of a local governmental entity "arising from acts or omissions while performing or in good faith purporting to perform his or her official duties," that officer may ask the governmental entity to pay for his or her defense. Subsection 2 requires payment if the entity finds that the officer's actions qualify. After holding that a judicial disciplinary proceeding is not an action for damages to which RCW 4.96.041 applies, Division Three upheld the prosecuting attorney's refusal to pay for the judge's legal representation under both RCW 4.96.041(2) and the applicable county code provision. Colby, 133 Wash.App. at 391, 136 P.3d 131.