207 P.3d 1245 (2009)
Honorable Richard B. SANDERS, as Justice of the Washington Supreme Court, Petitioner,
v.
STATE of Washington, Respondent.
No. 80393-5.
Supreme Court of Washington, En Banc.
Argued December 10, 2008.
Decided May 14, 2009.
*1246 Paul J. Lawrence, Matthew J. Segal, Gregory J. Wong, K & L Gates LLP, Seattle, WA, for Petitioner.
Peter R. Jarvis, Hinshaw & Culbertson, Portland, OR, Timothy George Leyh, Randall Thor Thomsen, Danielson Harrigan Leyh & Tollefson LLP, Seattle, WA, for Respondent.
THOMPSON, J.[*]
¶ 1 Justice Richard Sanders seeks review of the Court of Appeals decision that the State has no duty to defend him or to reimburse him for attorney fees he incurred in defending himself before the Commission on Judicial Conduct. At issue is whether the State is required to defend a judge who is alleged to have committed an ethics violation while otherwise within the purview of his or her official duties.
¶ 2 We affirm the Court of Appeals, holding the State has no duty to defend when a judge knows or should know that the conduct of which he or she is accused is unethical and therefore not an official act.[1]

FACTS
¶ 3 Justice Sanders toured the Special Commitment Center (SCC)[2] at McNeil Island Corrections Center on January 27, 2003. Soon after his visit, a complaint was filed with the Commission on Judicial Conduct (Commission), alleging Justice Sanders had communicated with SCC residents who had cases pending before the Washington Supreme Court.
¶ 4 While the Commission was investigating the complaint, Justice Sanders made a request to the attorney general for legal representation under RCW 43.10.030 and.040. The request was denied, deferring determination of the judge's eligibility for a public defense until Commission proceedings concluded. Justice Sanders retained private counsel at his own expense.
¶ 5 In April 2004, the Commission determined that probable cause existed to believe Justice Sanders had violated the Code of Judicial Conduct. Justice Sanders then brought a declaratory judgment action in Thurston County Superior Court, seeking to require the State to defend him. The superior court denied the parties' cross-motions for summary judgment, ruling there was a material issue of fact as to whether Justice Sanders had committed willful misfeasance. The Court of Appeals granted Justice Sanders' motion for discretionary review of the superior court's ruling.
¶ 6 While review was pending in the Court of Appeals, the Commission issued its decision that Justice Sanders had violated Canon 1 of the Code of Judicial Conduct by failing to enforce high standards of judicial conduct[3] and Canon 2(A) by failing to promote public confidence in the integrity and impartiality of the judiciary.[4] The Commission imposed the sanction of admonishment.[5] Justice Sanders appealed the Commission's decision.
¶ 7 Meanwhile, the Court of Appeals granted a motion by Justice Sanders to stay its review of the declaratory judgment action in order to allow the superior court to apply the *1247 Commission's findings. In the superior court, Justice Sanders sought to obtain information about how the State had interpreted its duty to defend other state officials. The State moved to quash Justice Sanders' discovery requests and to stay the superior court proceedings until the Supreme Court ruled regarding the Commission's decision.[6] The superior court granted the stay.
¶ 8 The Court of Appeals then granted Justice Sanders' motions to lift its earlier stay and to extend discretionary review to include the superior court's stay order.
¶ 9 The court held that under chapter 42.52 RCW, "the attorney general has the discretion to decline representation, subject to a duty to reimburse a judge for defense costs in the event that the Commission later dismisses the charges or exonerates the judge of all violations of the Canons." Sanders v. State, 139 Wash.App. 200, 202, 159 P.3d 479 (2007). Because Justice Sanders was determined to have violated the Code of Judicial Conduct, the Court of Appeals ruled the State has no duty to defend him or to reimburse him for the attorney fees he incurred in defending himself.[7]

ANALYSIS

Standard of Review
¶ 10 The resolution of this case requires interpretation of statutory provisions. "The meaning of a statute is a question of law reviewed de novo." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002).

Applicable Law
¶ 11 The Washington Constitution provides that "[t]he attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law." Const. art. III, § 21. In accordance with the constitutional directive, the following statutes were enacted:
The attorney general shall ... [d]efend all actions and proceedings against any state officer or employee acting in his official capacity, in any of the courts of this state or the United States.
RCW 43.10.030(3).
The attorney general shall also represent the state and all officials ... of the state in the courts, and before all administrative tribunals or bodies of any nature, in all legal or quasi legal matters, hearings, or proceedings, and advise all officials ... of the state in matters involving legal or quasi legal questions, except those declared by law to be the duty of the prosecuting attorney of any county.
RCW 43.10.040.
¶ 12 Although the parties discuss both statutes, RCW 43.10.030 is not directly applicable here. Justice Sanders seeks attorney fees for his defense before the Commission not in an action or proceeding against him in state or federal court.

Statutory Interpretation
¶ 13 The court's primary duty in interpreting any statute is "to discern and implement the intent of the legislature." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d *1248 318 (2003). In this case, the statute under which Justice Sanders seeks his fees is RCW 43.10.040.
¶ 14 As the Court of Appeals notes, RCW 43.10.040 was enacted in 1941 "to end the proliferation of attorneys hired by various state agencies and place the authority for representation of state agencies in the Attorney General." State v. Herrmann, 89 Wash.2d 349, 354, 572 P.2d 713 (1977).
¶ 15 RCW 43.10.040 uses the term "officials." An "official" is defined as "one who holds or is invested with an office." Webster's Third New International Dictionary 1567 (2002). When used as an adjective, "official" means "derived from the proper office or officer or authority." Id. We accord a plain and ordinary meaning to terms that are not defined by a statute unless a contrary legislative intent appears. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813, 828 P.2d 549 (1992).
¶ 16 To apply the statute without an official acts limitation would lead to a result the legislature obviously did not intend requiring the attorney general to represent a judge before administrative agencies in all matters, both official and private. "Statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided." State v. Stannard, 109 Wash.2d 29, 36, 742 P.2d 1244 (1987).
¶ 17 There is no dispute that Justice Sanders is a state official. But the determinative question for purposes of his entitlement to representation by the attorney general is whether Justice Sanders' ethical violations were official acts. We conclude they were not.
¶ 18 Justice Sanders was charged in the complaint before the Commission with ethical violations involving acts that are outside the scope of a judge's official duties. His acts involved contact with offenders who had cases pending in his court. Representation of a judge being disciplined for ethical violations is beyond the purpose of RCW 43.10.040. Its purpose is to provide defense to an official when engaged in official acts. Justice Sanders knew or should have known that his conduct was unethical; therefore, he is not entitled to representation.[8]
¶ 19 Justice Sanders argues that denying representation could leave a judge vulnerable to improper or unfounded charges of ethics violations. If a judge is wrongly charged, however, there are adequate safeguards within the Commission's procedures. Before a case may proceed to hearing, there must be a screening, a preliminary investigation, and a finding of probable cause. Comm'n on Judicial Code R.P. 17.
¶ 20 Justice Sanders also argues that since he prevailed on the more serious charges, he should be entitled to recover a pro rata share of his attorney fees. In our view, if a judge is found to have violated any of the canons of the Code of Judicial Conduct, there is no right to representation or reimbursement. Such is the case here.

CONCLUSION
¶ 21 We affirm the result reached by the Court of Appeals, deny Justice Sanders' request for the award of fees and costs, and remand the case to the trial court for dismissal.
WE CONCUR: PATRICIA AITKEN, DAVID FOSCUE, JJ., STANLEY WORSWICK and WALDO F. STONE, JJ. Pro Tem.
UTTER, J.[**] (dissenting).
¶ 22 I dissent because the majority fails to present guidelines for future cases dealing with the same or similar issues. By merely disagreeing with the outcome of applying the plain language of the statute to the facts of *1249 this case, the majority leaves no discernible path for future cases to follow.
¶ 23 The majority asserts Justice Sanders is not entitled to representation because he knew or should have known that his conduct was unethical. This position is untenable as illustrated by the fact that the attorney general, not a member of the Commission on Judicial Conduct (Commission) or a private citizen, complained of Justice Sanders' misconduct. Holding that the attorney general has sole discretion under RCW 43.10.040 allows the attorney general both to initiate a complaint and to control an accused judge's entitlement to a defense. While the State retained private counsel at public expense, Justice Sanders was obliged to fund his own representation.
¶ 24 In the complaint, the attorney general asserts Justice Sanders violated Canons 2(A), 3(A)(4), 3(A)(5), and 3(D)(1). The Commission's subsequent statement of allegations includes violations of Canons 1, 2, 3(A)(1), 3(A)(4), 3(A)(5), and 7. Even though Justice Sanders was ultimately found to have violated only Canons 1 and 2(A), he was forced to defend against all the charges, personally assuming the burden of proving that many of them lacked merit. The majority cites no case law or statutory authority to support such an unreasonable result. As the majority recognizes, the cost of representation is not insignificant. Justice Sanders was awarded more than $90,000 in reimbursement from the State for costs and expenses he incurred following the earlier complaint to the Commission. It is ironic that all of the resources of the State can be used to prosecute a judge accused of ethical misconduct, but none are available for his defense, even when most of the charges are not sustained.
¶ 25 In pertinent part, RCW 43.10.040 states unequivocally that the attorney general "shall ... represent the state and all officials ... of the state in the courts, and before all administrative tribunals or bodies of any nature, in all legal or quasi legal matters, hearings, or proceedings."[1] Under the statute's plain language, the State has an unqualified duty to represent judges accused of violating the Code of Judicial Conduct. The statute does not grant the State discretion to defer or to decline representation.[2]
¶ 26 "Our primary duty in interpreting any statute is to discern and implement the intent of the legislature." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). The starting point is "the statute's plain language and ordinary meaning." Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999). "A statute that is clear on its face is not subject to judicial construction." State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). "If the plain language of the statute is unambiguous, then this court's inquiry is at an end." State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007).
¶ 27 The majority nonetheless presents legislative history and dictionary definitions to conclude that representation of a judge charged with ethical violations is "beyond the purpose of RCW 43.10.040." Majority at 1248.
¶ 28 Indignation about Justice Sanders' actions should not override established principles of statutory interpretation. He has already been admonished. Properly interpreting the plain language of the controlling law does not constitute an endorsement of his conduct.
¶ 29 "We should not and do not construe an unambiguous statute." Vita Food Prods., Inc. v. State, 91 Wash.2d 132, 134, 587 P.2d 535 (1978). The court is constrained to give *1250 the plain language of the statute its full effect.
¶ 30 I respectfully dissent.
WE CONCUR: DANIEL J. BERSCHAUER and FREDERICK B. HAYES, JJ.
DRAPER, J.[***] (concurring in dissent).
¶ 31 I concur in Chief Justice Utter's well reasoned dissent, and I would extend it further. The majority improperly relies on the outcome of the underlying case as the basis for its decision.
¶ 32 This appeal is from a trial court ruling that predates any determination on the merits of the disciplinary action against Justice Sanders. The majority correctly states that the issue here is whether the State is required to defend a judge who is alleged to have committed an ethics violation, but it goes on to analyze the question of whether Justice Sanders was acting in his official capacity based upon the fact that a violation was committed: "[T]he determinative question for purposes of his entitlement to representation by the attorney general is whether Justice Sanders' ethical violations were official acts." Majority at 1248 (emphasis added). But when Justice Sanders brought suit in superior court to compel the attorney general to represent him before the Commission on Judicial Conduct (Commission), there had been no determination that he had committed an ethics violation. The majority decides this case after Justice Sanders was disciplined with facts that did not exist when the trial court made the ruling from which he appeals. In my judgment, this is the fundamental error that leads to Chief Justice Utter's concern about the uncertainty of the law for future cases.
¶ 33 I agree with the majority that an official acts limitation on the attorney general's duty to defend flows logically from RCW 43.10.030 to .040. But I cannot agree with the majority's holding that RCW 43.10.040 never applies when a judge is charged with a violation of the Code of Judicial Conduct.[1] The majority appears to hold that it is impossible to violate the Code without stepping outside a judge's official capacity. If a memory lapse or arithmetic error results in exceeding the 90-day rule for announcing a decision, the majority would apparently conclude that the judge has stepped from official capacity to private life. Likewise, a judge who drowses on the bench would be acting entirely outside his or her official capacity. The holding is presented without analysis or citation to authority.
¶ 34 In deciding that Justice Sanders was not acting within his official capacity, the majority disregards the contrary rulings of the trial court,[2] the Commission,[3] and the Supreme Court.[4] The statement that those tribunals did not consider and find that Justice Sanders was acting in his official capacity is strained and unconvincing. The sum total of the majority's analysis is the unsupported conclusion that Justice Sanders' ethics violations were not official acts. This conclusion does not satisfy the need for careful analysis, even if one assumes the attorney general has discretion about whether to defend a judge. And, in effect, the majority's position allows the attorney general to initiate a misconduct complaint while exercising sole control over the accused judge's access to a defense.
¶ 35 Finally, and most significantly in my view, the grant of unqualified discretion to *1251 the attorney general is beyond the province of the courts. Even though RCW 43.10.030 and .040 were enacted long before the Commission was created, the majority presumes to declare that the legislative intent of the statutes is applicable in the context of Commission proceedings. The plain language of RCW 43.10.040 provides that the attorney general shall represent all state officials before all administrative tribunals of any nature. The majority interprets this language to mean that the attorney general has discretion to decline both representation and reimbursement for defense costs, depending upon the outcome of disciplinary proceedings. Such a result may seem popular as an expression of disapproval for Justice Sanders' conduct, but it is an unacceptable exercise of judicial activism.
¶ 36 In my view, the majority goes far beyond the bounds of statutory construction and the examination of legislative intent. The only legislative history cited is to the effect that the legislature wanted to end the proliferation of attorneys hired by state agencies. That history does not speak to the defense of state officials who are sued individually and who should be protected from personal expense when they act in their official capacity. The proper approach is to allow the legislature to declare its own intent either by amending the existing statute or by letting stand a decision in which the plain meaning of that statute is applied.
WE CONCUR: ROBERT F. UTTER, Acting C.J., DANIEL J. BERSCHAUER and FREDERICK B. HAYES, JJ.
NOTES
[*] Judge Donald H. Thompson is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] We affirm the result but choose not to consider the grounds upon which the Court of Appeals based its decision.
[2] The SCC provides mental health treatment for civilly committed sex offenders who have completed their prison sentences.
[3] Judges shall uphold the integrity and independence of the judiciary:

An independent and honorable judiciary is indispensable to justice in our society. Judges should participate in establishing, maintaining, and enforcing high standards of judicial conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.
Canon 1.
[4] Judges should avoid impropriety and the appearance of impropriety in all their activities:

Judges should respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 2(A).
[5] Admonishment is the Commission's least severe disciplinary action.
[6] The Supreme Court upheld the Commission's decision and its sanction. In re Disciplinary Proceeding Against Sanders, 159 Wash.2d 517, 145 P.3d 1208 (2006).
[7] In 1996, the Commission investigated a complaint about Justice Sanders' remarks to pro-life supporters during a rally on the state capitol campus. The Commission concluded that the justice's actions violated several provisions of the Code of Judicial Conduct and ordered that he be reprimanded and required to complete a judicial ethics course. The Supreme Court reversed the Commission's decision, holding the evidence did not establish, by the clear and convincing proof required for a restriction on his First Amendment rights, that Justice Sanders' conduct threatened or compromised the integrity or appearance of impartiality of the judiciary. In re Disciplinary Proceeding Against Sanders, 135 Wash.2d 175, 955 P.2d 369 (1998). Justice Sanders then sued the State for reimbursement of the attorney fees he incurred in defending himself. The superior court ruled that state law requires the attorney general to defend judges subject to disciplinary proceedings before the Commission for actions taken in their official capacity. Sanders v. State, No. 99-2-02349-5 (Thurston County Super. Ct. Mar. 5, 2001). Justice Sanders was awarded his costs and expenses before the Commission, as well as fees and costs incurred in the subsequent action, in the amount of $92,479. The State did not appeal the judgment and order.
[8] The Supreme Court did not previously rule that Justice Sanders' ethical violations were official actsonly that the violations occurred "within the context of his judicial duties." Sanders, 159 Wash.2d at 523, 145 P.3d 1208. Likewise, the Commission did not conclude that Justice Sanders' ethical violations were official acts. The Commission considered the issue only with regard to aggravating and mitigating circumstances in order to determine the proper sanction.
[**] Justice Robert F. Utter is serving as chief justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] "When an individual's rights depend upon giving the word `shall' an imperative construction, `shall' is presumed to have been used in reference to that right or benefit and it receives a mandatory interpretation." Scannell v. City of Seattle, 97 Wash.2d 701, 705, 648 P.2d 435, 656 P.2d 1083 (1982).
[2] The legislature has qualified the attorney general's duty to defend when a state officer is sued for damages (RCW 4.92.070) and when a state officer is accused of a crime (RCW 10.01.150). This case, however, concerns ethical violations, not a tort claim or criminal charge. The legislature has not limited the attorney general's duty to represent judges accused of violating the Code of Judicial Conduct.
[***] Judge David R. Draper is serving as justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] "Representation of a judge being disciplined for ethical violations is beyond the purpose of RCW 43.10.040." Majority at 1248.
[2] The trial court found that "Justice Sanders was acting in his official capacity when he visited the special offender unit at McNeil Island." Clerk's Papers (CP) at 168. The State neither assigned error nor cross-appealed as to this finding.
[3] The Commission stated, "All of the misconduct took place in the Justice's official capacity." Suppl. CP at 236.
[4] "Justice Sanders' actions were not simply undertaken as a private citizen, but rather within the context of his judicial duties." In re Disciplinary Proceeding Against Sanders, 159 Wash.2d 517, 523, 145 P.3d 1208 (2006).