IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BRASHEAR ELECTRIC, Inc., a Washington Corporation, | ) ) ) | No. 37379-7-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| NORCAL PROPERTIES, LLC, a Washington limited liability company; COLUMBIA STATE BANK, a Washington chartered bank; BLUE BRIDGE PROPERTIES, LLC, a Washington limited liability company, | ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents, | ) ) | |
| WHEATLAND BANK, a Washington chartered bank; NELSON ROOFING ENTERPRISES, INC., an Oregon Corporation d/b/a PALMER ROOFING COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

LAWRENCE-BERREY, J. — To secure payment for an "improvement" of real property, RCW 60.04.091 requires a contractor to record a notice of a claim of lien not later than 90 days after ceasing to furnish labor, professional services, materials, or equipment, or the last date on which employee benefit contributions were due. "Improvement" includes repairing real property.

The question we answer today is whether the 90 days to record a claim of lien is extended by a contractor performing warranty work—that is, work performed after substantial completion to correct nonconforming work. We strictly construe "repairing" to exclude a contractor's correction of its own work and conclude that performing warranty work does not extend the 90 days to record a claim of lien.

FACTS

Norcal Properties, LLC and Blue Bridge Properties, LLC own adjacent properties. Under separate contracts, the owners hired prime contractor Vandervert Construction, Inc. to construct a commercial retail building on each property. The relevant provisions of each contract are identical. Vandervert hired subcontractors, including Brashear Electric, Inc. to work on both projects.

Vandervert's contracts with the owners required it, for a period of one year after substantial completion, to promptly correct work not conforming to the contract requirements. The contracts required Vandervert to bear the cost of correcting its work. Vandervert's contracts with Brashear required Brashear to assume all warranty obligations applicable to its work under Vandervert's contracts with the owners.

Brashear completed work on the Norcal project on June 28, 2017, and sent a final invoice to Vandervert on August 17, 2017. Brashear completed work on the Blue

2

Bridge project on September 29, 2017, and sent a final invoice to Vandervert on

October 26, 2017. The owners fully paid Vandervert.

On January 8, 2018, a tenant of the Norcal building notified Vandervert that the

roof was leaking. An initial inspection indicated that the leak was due to Brashear's

improper installation of the air conditioning unit. In accordance with the contractual

warranty provision, Vandervert directed Brashear to send an electrician to fix the leak.

On January 17, Jerry Peal, a Brashear electrician, applied caulking to temporarily

fix the leak until a roofing contractor could make a permanent repair. Closer inspection

revealed that Brashear was not at fault for the leak.

While Mr. Peal was on the Norcal property, Vandervert directed him to repair a

loose connection in a light fixture at the Blue Bridge building. Mr. Peal fixed the loose

connection.

On January 30, Brashear recorded a claim of lien against the Norcal property for

$12,830.81, the amount Vandervert owed it on that project. The next day, Brashear

recorded a claim of lien against the Blue Bridge property for $36,278.50, the amount

Vandervert owed it on that project. On February 2, 2018, Vandervert filed for

receivership.

No. 37379-7-III
*Brashear Elec., Inc. v. Norcal Props., LLC*

In June 2018, Brashear commenced this action to foreclose its claims of liens against the two properties. Eventually, the parties filed cross motions for summary judgment. The trial court orally ruled in favor of the owners, determining that the warranty work did not extend the 90 day period for recording Brashear's claims of liens. It later entered written orders. Brashear timely appealed.

ANALYSIS

PARTIES' ARGUMENTS

Brashear contends the trial court misinterpreted RCW 60.04.091 and the surrounding statutory scheme. It argues the pertinent statutes are unambiguous and require a conclusion that its warranty work was "labor" that extended the time to record its claims of liens. Alternatively, if the pertinent statutes are ambiguous, it argues we must give them a liberal construction and reach a similar conclusion.

The owners argue the trial court properly strictly construed the pertinent statutes when it ruled that the warranty work did not extend the time to record the claims of liens. The owners cite *Wells v. Scott*, 75 Wn.2d 922, 454 P.2d 378 (1969), for the proposition that warranty work, especially minor warranty work, does not extend the time to record a claim of lien.

4

Brashear responds that *Wells* was decided before enactment of chapter

60.04 RCW.  *See* LAWS OF 1991, ch. 281.  It argues *Wells* no longer is controlling

because RCW 60.04.900 requires provisions of the mechanics' lien statutes "to be

liberally construed to provide security for all parties intended to be protected by their

provisions."[1]

We first discuss whether our analysis is governed by rules of strict or liberal

construction.  We then construe the pertinent statutory scheme.

A.      STRICT OR LIBERAL CONSTRUCTION

Prior to 2011, the law was unclear as to what extent courts were required to strictly

construe the mechanics' lien statutes.  The confusion was aptly summarized in

*Lumberman's of Washington, Inc. v. Barnhardt*, 89 Wn. App. 283, 286, 949 P.2d 382

(1997):

> Although RCW 60.04.900 states that the lien statutes are to be liberally
> construed to provide security for all parties intended to be protected by their
> provisions, case law has established that mechanics' and materialmen's
> liens are creatures of statute, in derogation of common law, and therefore
> must be strictly construed to determine whether a lien attaches.

---

[1] Brashear also relies on *Kirk v. Rohan*, 29 Wn.2d 432, 187 P.2d 607 (1947), to
support its argument that warranty work extends the time to record a claim of lien.  *Kirk*
is easily distinguishable on the basis that the contractor returned to perform warranty
work *and* original contract work.  *Id.* at 433-34.

No. 37379-7-III
*Brashear Elec., Inc. v. Norcal Props., LLC*

In *Williams v. Athletic Field, Inc.*, 172 Wn.2d 683, 261 P.3d 109 (2011), the Washington Supreme Court clarified when courts are to apply a strict or a liberal construction to chapter 60.04 RCW. The court reviewed the history of strict construction of the mechanics' lien statutes. It noted that older cases applied the rule only when determining what people or services came within the protections of the mechanics' lien statutes. *Id.* at 695. It then noted that a modern trend of cases applied strict construction more broadly. *Id.* at 696. Rejecting this modern trend, the court held:

> [T]he appropriate way to view the competing canons of strict and liberal construction is found in our early cases. The strict construction rule, at its origin, was invoked to determine whether persons or services came within the statute's protection. Expanding the rule of strict construction beyond this inquiry effectively nullifies RCW 60.04.900.

*Id.*

Here, the question is whether warranty work, a type of service, comes within the protection of the mechanics' lien statutes. We therefore strictly construe the pertinent statutes to decide this question.

B.     INTERPRETATION OF RCW 60.04.091

When interpreting a statute, an appellate court first considers the statute's plain meaning. *Williams*, 172 Wn.2d at 693. "If the statute is ambiguous, we may consider

6

aids to interpretation. A statute is ambiguous if it is susceptible to two or more

reasonable interpretations." *Id.* (citation omitted).

RCW 60.04.091 provides in relevant part:

> Every person claiming a lien under RCW 60.04.021 shall file for recording
> . . . a notice of claim of lien not later than ninety days after the person has
> ceased to furnish labor, professional services, materials, or equipment . . . .

"Furnishing labor, professional services, materials, or equipment" is defined to

include "*any* labor . . . for the improvement of real property." RCW 60.04.011(4)

(emphasis added). "Improvement" includes "[c]onstructing, altering, *repairing*,

remodeling, demolishing, clearing, grading, or filling in, of, to, or upon" real property.

RCW 60.04.011(5)(a) (emphasis added).

Brashear's warranty work certainly involved labor. The question is whether its

warranty work involved labor "repairing" real property. More directly, does "repairing"

extend to correcting one's own nonconforming work?

To discern the meaning of a word undefined by statute, we often turn to a

dictionary definition. *State v. A.M.R.*, 147 Wn.2d 91, 94, 51 P.3d 790 (2002). "Repair"

means "to restore by replacing a part or putting together what is torn or broken."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (1993). "Restore" strongly

suggests that the broken thing once worked properly. "Nonconforming work" suggests

the opposite. A strict construction of "repairing" supports a conclusion that it does not encompass correcting one's own nonconforming work.

Another rule of construction leads us to the same conclusion. The principle of noscitur a sociis provides:

> "[A] single word in a statute should not be read in isolation. Rather, the meaning of a word may be indicated or controlled by reference to associated words. In applying this principle to determine the meaning of a word in a series, a court should 'take into consideration the meaning naturally attaching to them from the context, and . . . adopt the sense of the words which best harmonizes with the context.'"

*State v. Barnes*, 189 Wn.2d 492, 503, 403 P.3d 72 (2017) (second alteration in original) (Wiggins, J., concurring) (quoting *State v. Gonzales Flores*, 164 Wn.2d 1, 12, 186 P.3d 1038 (2008)).

The series of words—"[c]onstructing, altering, repairing, remodeling, demolishing, clearing, grading, or filling in"—can be harmonized by recognizing that contractors are hired and paid to do each of these things. With respect to repairing, contractors are hired and paid to restore something that is broken. They are not hired and paid to correct their own nonconforming work. Rather, their own work is warrantied, and they are contractually obligated to correct it at no cost to the owner.

An additional rule of construction leads us to the same result. A statute is construed to effect its legislative purpose, while avoiding unlikely, absurd, or strained consequences. *Sanders v. State*, 166 Wn.2d 164, 172, 207 P.3d 1245 (2009). A lien is intended to secure payment for money owed. A contractor is not paid to correct its own nonconforming work. Warranty work, therefore, is not lienable. It is unlikely that the legislature intended for nonlienable warranty work to extend the time to record a claim of lien.

The result here is consistent with the 1969 case of *Wells*, 75 Wn.2d 922. There, Wells performed electrical work on two buildings owned by Scott. *Id*. Wells completed work on September 1, 1965. *Id*. at 925. Wells had guaranteed the work for one year after completion. *Id*. On May 6, 1966, Scott instructed Wells to correct two defective circuit breakers in one building. *Id*. In June, Scott then recorded a claim of lien. *Id*.

9

No. 37379-7-III
*Brashear Elec., Inc. v. Norcal Props., LLC*

The *Wells* court disposed of the electrician's argument in a single paragraph, without citation to any previous case or statute:[2]

> The trial court correctly held that a labor and materialman's lien is a creature of statute in derogation of common law, and that its statutory terms must be strictly construed. It held that since construction of the buildings was completed on September 1, 1965, the 90-day filing period for a claim of lien commenced to run at that time; that since the claim was not filed until approximately 280 days thereafter, it was of no force and effect. We concur. The 1-year guarantee did not extend the statutory time within which the claim of lien could properly be recorded.

---

[2] The pertinent statutes then in effect did not contain a definition of "improvement," but were otherwise substantially the same as those we construe today. They provided:

> **[RCW] 60.04.060  Claim—Contents—Form—Filing—Joinder.** No lien created by this chapter shall exist, and no action to enforce the same shall be maintained, unless within ninety days from the date of the cessation of the performance of such labor, the furnishing of such materials, or the supplying of such equipment, a claim for such lien shall be [recorded] . . . .

*See* LAWS OF 1959, ch. 279, § 5.

> **[RCW] 60.04.010  Lien authorized—Bond by railroad company.** Every person performing labor upon, furnishing material, or renting, leasing or otherwise supplying equipment, to be used in the construction, alteration or repair of any . . . building . . . or any other structure . . . has a lien upon the same for the labor performed, material furnished, or equipment supplied . . . .

*See* LAWS OF 1959, ch. 279, § 1.

In addition, the following note was contained below the text of RCW 60.04.010:

> **Construction:**  "The provisions of law relating to liens created by this act, and all proceedings thereunder, shall be liberally construed with a view to effect their objects."  [1893 c 24 § 18.]

10

No. 37379-7-III
*Brashear Elec., Inc. v. Norcal Props., LLC*

*Id.*

Our analysis provides a statutory framework consistent with the conclusion in

*Wells*: Warranty work does not extend the time to record a claim of lien.

C.     ATTORNEY FEES AND COSTS

The owners request an award of attorney fees and costs and cite

RCW 60.04.181(3) in support of their request.  RCW 60.04.181(3) provides in relevant

part:

> The court may allow the prevailing party in the [lien foreclosure] action,
> whether plaintiff or defendant, as part of the costs of the action, the moneys
> paid for recording the claim of lien, costs of title report, bond costs, and
> attorneys' fees and necessary expenses incurred by the attorney in the
> superior court, court of appeals, supreme court, or arbitration, as the court
> or arbitrator deems reasonable.

Provided the owners comply with RAP 18.1(d), we grant them an award of

reasonable attorney fees and necessary expenses incurred on appeal.  That award will be

determined by our commissioner.  RAP 18.1(f).

Affirmed.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.

Siddoway, J.

11